No. 83-162

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

STATE OF MONTANA,

       Plaintiff and Appellant,

-vs-

ARTHUR LEROY MAGNUSON,

       Defendant and Respondent.

---

APPEAL FROM:  District Court of the Fourteenth Judicial District,
In and for the County of Musselshell,
The Honorable Roy Rodeghiero, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Hon. Mike Greely, Attorney General, Helena, Montana
Mary Kay Wheeler, 3rd Yr. Law Student, introduced
by James McLean, Asst. Atty. General, argued for the
State
John L. Pratt, County Attorney, Roundup, Montana

    For Respondent:

        Kathryn R. Baylis argued, Roundup, Montana

---

               Submitted:  March 2, 1984

               Decided:  June 12, 1984

Filed:  JUN 12 1984

*Ethel M. Harrison*

---
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

The State of Montana appeals from an order of the District Court, Fourteenth Judicial District, Musselshell County, dismissing a charge of operating a motor vehicle while under the influence of intoxicating liquor against the defendant, Arthur Leroy Magnuson. We reverse.

On the afternoon of July 29, 1982, Magnuson became intoxicated and drove away from the Kee Angus Ranch in Musselshell County in his blue Ford Bronco. Before he left he had been confronted by Mary Kee, a friend, who knew he had been drinking. Mary Kee had attempted to persuade Magnuson not to drive and had taken the keys to his Bronco. Magnuson found another set of keys and left the ranch.

Kee, concerned that Magnuson was driving while intoxicated, called the Sheriff's Office, hoping to speak with Sheriff Brian Neidhardt, a friend of Kee's. As Sheriff Neidhardt was not there Kee called the Alcoholics Anonymous number listed in the local newspaper. Kee spoke with Mac House, the director of the Musselshell County Drug and Alcohol Program. Kee did not know that Magnuson was in treatment with Mac House at that time and had never spoken with Mac House prior to the phone call. Kee told House about the problem and the two of them agreed to let matters take their course.

After receiving Kee's phone call, House discussed the situation with Undersheriff Floyd Ray Fisher. House advised Undersheriff Fisher that Magnuson was intoxicated and was driving his Bronco. Undersheriff Fisher later testified that he had seen the vehicle around town at a few of the

-2-

different bars, and that after House described the vehicle to him, he remembered the vehicle. House also advised Undersheriff Fisher that Magnusons's usual hangout was Tracy's Bar. Undersheriff Fisher asked House if he wanted to accompany him and the two of them got into Fisher's vehicle.

As Fisher drove toward Tracy's Bar, he and House saw Magnuson's vehicle coming in the opposite direction on Highway 87. Fisher later testified that Magnuson had "approximately a quarter to almost half of his vehicle in my lane of traffic." As Fisher followed Magnuson, "he turned his right hand blinker on to make a right hand turn, and then made a left hand turn." After Fisher stopped Magnuson he approached the vehicle and when Magnuson opened the door of his vehicle, Fisher "could smell alcohol, a very strong odor of alcohol." When Fisher asked Magnuson to step out of the vehicle Magnuson "had to take hold of the door to keep from falling to the ground." When Fisher asked Magnuson to say the alphabet he could only make it as far as G. When Fisher asked Magnuson if he could walk a straight line, heel to toe, Magnuson "had to take several steps sideways to keep from falling down." Fisher then arrested Magnuson and advised him of his Miranda rights.

Based upon the affidavit of the county attorney, the District Court granted a motion for leave to file an information against Magnuson charging him with violating Section 61-8-401, MCA, driving while under the influence of intoxicating liquor. The county attorney's affidavit indicated that a teletype report on Magnuson showed four prior convictions for driving while under the influence in

Iowa between January 17, 1980 and May 26, 1981.

The issue to be resolved by this Court concerns the effect of federal statutes and regulations upon a state criminal prosecution for driving under the influence. The federal statutes and regulations require that patient records maintained in connection with the performance of any program or activity related to alcohol abuse treatment remain confidential. The State concedes that the Musselshell County Drug and Alcohol Program is federally funded and the record shows that Magnuson had been attending counseling sessions with Mac House for approximately six weeks before he was arrested.

On motion of the defendant to dismiss, the District Court found "that the information provided by . . . Mac House to . . . Fisher. . . was tainted within the prohibition" of Title 42 U.S.C.A. Sections 4582(a) and (c) and 42 C.F.R. Section 2.11(o). As a result, the District Court dismissed the driving while intoxicated charge against Magnuson and the State appealed.

The first issue is whether Title 42 U.S.C.A. Section 4582 applies to the information House provided Undersheriff Fisher concerning the fact that Magnuson was driving while intoxicated.

The federal statutes involved in this case are as follows:

> "Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to alcoholism or alcohol abuse education, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States

-4-

shall, except as provided in subsection (e) be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section. 42 U.S.C.A. Section 4582 (a).

"Except as authorized by a court order granted under subsection (b)(2)(c) of this section, no record referred to in subsection (a) of this section may be used to initiate or substantiate any criminal charges against a patient or to conduct any investigation of a patient." 42 U.S.C.A. Section 4582(c) (Emphasis added).

The applicable federal regulations in this case are

these:

"Records. The term 'records' includes any information, whether recorded or not, relating to a patient, received or acquired in connection with the performance of any alcohol abuse or drug abuse prevention function, whether such receipt or acquisition is by a program, a qualified service organization, or any other person. 42 C.F.R. Section 2.11(o). (Emphasis added.)

"Except as provided in paragraph (b) of this section, this part applies to records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any alcohol abuse or drug abuse prevention functions. 42 C.F.R. Section 2.12

". . .

"(3) Which is assisted by funds supplied by any department or agency of the United States, whether directly through a grant, contract or otherwise, or indirectly by funds supplied to a State or local government unit through the medium of contracts, grants of any description, general or special revenue sharing, or otherwise . . . 42 C.F.R. Section 21.12(a)(3).

"The term 'alcohol abuse or drug abuse prevention function' means any program or activity relating to alcohol abuse or drug abuse education, training, treatment, rehabilitation, or research . . . " 42 C.F.R. Section 211(k).

-5-

Resolution of the first issue in this case depends upon whether the information House communicated to Fisher was within the definition of "records" as that term is defined in 42 C.F.R. Section 2.11(o). That determination depends on whether House was performing an "alcohol abuse or drug abuse prevention function" as defined in 42 C.F.R. Section 2.11(k) at the time he received the information.

The information conveyed from House to Fisher was that Magnuson was intoxicated; that he was driving a Bronco; that House wanted Fisher to watch out for Magnuson; and Magnuson's usual hangout. Respondent asserts that part of the information conveyed from House to Fisher--information about the kind of car Magnuson would be driving, as well as his usual hangout--came from the client-counselor relationship. However, Undersheriff Fisher testified that after House described Magnuson's vehicle he remembered it because he had observed it at some of the local bars on prior occasions.

If the information was within the prohibition of the federal legislation it must be ". . . received or acquired in connection with the performance of any alcohol abuse or drug abuse prevention function." Alcohol abuse prevention function means ". . . any program or activity relating to alcohol abuse . . . education, training, treatment, rehabilitation, or research." The issue thus becomes: was House involved in a program or activity related to alcohol abuse education, training, treatment, rehabilitation or research at the time he received the information from Mary Kee? Clearly he was not, and the information does not fall within the scope of the federal legislation.

-6-

In addition, the federal legislation does not apply in this case because the information received by Undersheriff Fisher from House was not used to "initiate or substantiate any criminal charges" against Magnuson. See 42 U.S.C.A. Section 4582(c). The arresting officer testified that the basis for Magnuson's arrest was not the information received from House but, rather, his observations of Magnuson weaving down the highway, exiting the car with difficulty, smelling of alcohol and failing basic sobriety tests.

Next, the State argues that suppression of the evidence was an erroneous remedy for violating the federal statute because the proper remedy under Title 42 U.S.C.A. Section 4582 is a fine.

Title 42 U.S.C.A. Section 4582(f), provides: "[a]ny person who violates any provision of this section or any regulation issued pursuant to this section shall be fined not more than $500 in the case of a first offense, and not more than $5,000 in the case of each subsequent offense."

In making its decision, the District Court stated ". . . from the evidence presented that the information provided by alcohol and drug abuse counselor Mac House to Deputy Sheriff Floyd Fisher, leading to the arrest of the Defendant, was tainted within the prohibition of [the federal statutes]." However, when 42 U.S.C.A. Section 4582 is read as a whole, it is clear that the remedy Congress intended for a violation of one of its confidentiality provisions is a fine as provided in 42 U.S.C.A. Section 4582(f). Rules of statutory construction dictate that legislation must be read as a whole in order to ascertain legislative intent. Wynia v. City of Great Falls (1979),

183 Mont. 458, 600 P.2d 802. The fact that a remedy is provided in the legislation indicates that Congress considered the possibility of a violation and determined the appropriate remedy for that violation. If Congress had intended that suppression and dismissal were the appropriate remedies for a violation of a confidentiality it would have so provided.

Since the issues previously discussed are dispositive of the case we need not consider the other issue raised by the State.

Reversed and remanded for further proceedings in accordance with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

Mr. Justice John C. Sheehy, dissenting:

The facts recited in the majority opinion require further elaboration. After the telephone conversation with Mary Kee, Mac House went out and searched for Undersheriff Floyd Fisher, whom he found at the Cattlemen's Restaurant, having his dinner at 8:30 p.m. House advised Undersheriff Fisher that he had information that Arthur Magnuson was intoxicated and was driving his Ford Bronco. In response to questions from Fisher, House described the vehicle that Magnuson was driving, and from the description Fisher remembered the vehicle as he had seen it parked outside of bars in the vicinity. House also advised the undersheriff that Magnuson's usual hangout was Tracy's Bar. When he had finished his dinner, the undersheriff asked House if he would "like to take a ride" and the two of them got into Fisher's vehicle. As they drove toward Tracy's Bar, they saw Magnuson's vehicle coming in the opposite direction on Highway 87. Fisher observed that Magnuson's vehicle crossed the centerline several times and exhibited other signs of erratic driving.

The State concedes that the Musselshell County Drug and Alcohol Program is federally funded, and the record shows that Magnuson had been attending counseling sessions with Mac House for six weeks to two months before the driving charge occurred.

The State first contends that the information received by House from Fisher was not the kind of patient information which Congress intended to protect. The State has pointed to 42 C.F.R. § 2.11(o), which defines records as including information "received or acquired in connection with the

performance of any alcohol or drug abuse prevention function."

The term "record" is very broadly defined in the federal regulation. It is not limited to information received from the patient alone, but includes "any information" recorded or unrecorded, "relating to a patient."

When Mary Kee used the telephone here looking for help, the number that she called was answered by Mac House, from the Musselshell Drug and Alcohol office. The information which she relayed to him about Magnuson "related to a patient." That information, and the further information about Magnuson's usual hangout which apparently Mac House also knew, were relayed by him to Undersheriff Fisher. I determine that such information is included within the term "record" the relaying of which is prohibited by the federal regulation.

It is a close question whether the information conveyed by House to Fisher was used to initiate criminal charges against Magnuson. It does appear clear from the record that while Fisher was investigating Magnuson in the presence and with the cooperation of House that the criminal charges were initiated, based upon the observations that Fisher made during the investigation.

The State contended and the majority apparently agrees that Congress did not intend to create a "sanctuary" for a patient from prosecution for its criminal acts. Whatever that may mean, it is fully clear that Congress did intend that no information regarding a patient should be imparted by one who obtained the information in a federally-funded program to initiate or substantiate any criminal charges against the patient or to conduct any investigation of a

- 10 -

patient. Here Arthur Magnuson was a patient, and Mac House, who was treating him under a federally-funded program used confidential information gained through such program to cause an investigation to be made of Magnuson.

As to whether the prohibition against release of information under the federally-funded program should be balanced with state policy against drunk driving, the line of demarcation is obviously hard to draw. Certainly there will be instances where the severity of the crime or the danger to society will be of such gravity as to require a prosecution even though information from such a federally-funded program was obtained. What is overweighing in this case, however, is not only that Mac House supplied the information, but then he actively participated in the investigation by accompanying the deputy to a place where Magnuson could be found. In so doing, he abused all the principles of the confidential relationship in which he was a paid participant. Certainly Congress did not anticipate that kind of use of its statutorily-protected information.

Finally I disagree with the majority that the remedy provided in Title 42 U.S.C.A. § 4582 is sufficient to enforce the provisions of the confidentiality of information under the federal provisions. The majority finds that the remedy provided in the federal act is enough for the Congress intended no more.

The answer to that contention is found in reviewing the Congressional reasons for establishing the federally-funded project. The object is to attract patients, free from stigma and criminal prosecution from what may be revealed by them in the course of their treatment. A mere fine against the violator of such confidence does not protect the patient

whose confidence has been abused. It is more by assuring the confidentiality of such information in this instance than in fining Mac House, that these objectives will be achieved. In fact the record is bare in this case that any retributive action has been brought against Mac House for his obvious violation of the confidential relationship.

I would determine that the federal statute, with its obvious objectives, makes it imperative that we do not enforce criminal prosecutions based on information received from persons who seek help from alcoholism in federally-funded projects. I expressly dissent.

John C. Sheehy
Justice

Mr. Justice Daniel J. Shea dissents, and will file a written dissent later.