No. 93-338

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

CAROL ANN WILLOUGHBY,

      Petitioner and Appellant,

-v-

ROLAND B. LOOMIS,

      Respondent and Respondent.



FILED

FEB 24 1994

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fifth Judicial District,
In and for the County of Beaverhead,
The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Thomas R. Scott, Beaverhead County Attorney, Dillon,
Montana; Hon. Joseph P. Mazurek, Attorney General,
Helena, Montana; April Armstrong, Child Support
Enforcement Division, Great Falls, Montana

      For Respondent:

          Vincent J. Kozakiewicz, Kozakiewicz Law Office,
Dillon, Montana

Submitted on Briefs:  December 9, 1993

Decided:  February 24, 1994

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from an order of the Fifth Judicial District, Beaverhead County, relating to the enforcement of child support payments under the Revised Uniform Reciprocal Enforcement of Support Act (RURESA). We reverse and remand.

We consider the following issues on appeal:

I. Did the District Court err in determining that Loomis should pay $10,000 in child support instead of the $13,000 actually owed?

II. Did the District Court err by ordering the child support paid into a trust for the educational purposes of the child?

III. Did the District Court err when it discharged the State of Montana as a party to this action under the applicable version of RURESA?

IV. Did the District Court err in determining that the child had reached the age of majority and was now the real party in interest?

Carol Ann Willoughby (Willoughby) and Roland B. Loomis (Loomis) were divorced in 1978. One daughter was born to the marriage in October of 1974. The divorce decree, issued from Jefferson County, ordered Loomis to pay $125 per month in child support. Although Loomis provided his daughter with sums of money and clothing from 1978 until 1987, he did not pay any support. He provided no defenses to this failure. Nor did Loomis introduce evidence showing the extent of the money he did give to his daughter.

2

On May 29, 1987, the Jefferson County Attorney initiated this RURESA action in the Fifth Judicial District Court, Jefferson County in an attempt to collect back child support for the nine years following the couple's divorce. Willoughby alleged that Loomis owed $13,000 in back child support. The RURESA petition for support enforcement also asked for current child support payments in the judicially set amount of $125 per month.

The action was certified to the Fifth Judicial District Court, Beaverhead County, where Loomis resides and the Beaverhead County Attorney continued the action on Willoughby's behalf. On June 8, 1987, the District Court in Beaverhead County ordered Loomis to appear and show cause why he should not be ordered to pay the current and delinquent support alleged in the RURESA petition.

On July 2, 1987, the court issued an order based on the testimony at the show cause hearing stating that Loomis was obligated to pay the $125 per month support. The order denied Willoughby's claim for delinquent child support and indicated that an evidentiary hearing was needed regarding this delinquency. No notice of entry of judgment was filed.

The Beaverhead County Attorney sought a further hearing which was held in September of 1987. This hearing at which both Willoughby and Loomis testified was followed by an October 16, 1987 order in which the court determined that Loomis owed back child support. Within this document, the court outlined provisions for a trust to be established in the name of the daughter for $10,000 in lieu of payment of the total amount of back child support. The

3

trust was to contain $10,000 by October of 1992 and was then to be given to the child who would then have reached the age of majority.

In March of 1988, the Beaverhead County Attorney sought to have Loomis held in contempt for not establishing the trust. At an April hearing, Loomis testified that he had failed to establish the trust under the court guidelines. He had opened the trust with a $40 deposit, but later drew that out. Throughout this time, Loomis continued to make his regular current payments of $125 per month.

In April of 1988, the court denied the motion for contempt and refused to amend the judgment. The court determined that failure to establish the trust payments according to the court's order was a "harmless dilatory act."

On January 21, 1993, the Beaverhead County Attorney filed a Motion and Order to Show Cause, again requesting that Loomis be held in contempt for complete failure to comply with the court's orders. The petition alleged that the trust contained no money on October 20, 1992, the time set for the $10,000 to have accumulated in the trust. During a hearing held on February 12, 1993, Loomis admitted that he had not complied with the court's earlier order. The court stated at that time that the judgment was intended to be a stay of execution which Loomis could discharge by making deposits into the trust account.

The ensuing March 18, 1993 order stated that Loomis had failed to pay $10,000 into the trust account and that the child was now an adult who could execute on the judgment. The court dismissed the State as a party and determined that a contempt order was not

4

appropriate.

The Beaverhead County Attorney filed a Motion for Reconsideration of Findings and Order, dated April 19, 1993. The court issued its final order on May 1993 denying the motion for reconsideration and prohibiting the State of Montana from any further action in this case. The State of Montana has filed an appeal from the May 3, 1993 order and from the earlier orders in this case.

I

Did the District Court err in determining that Loomis should pay $10,000 in child support instead of the $13,000 actually owed?

The State argues that the District Court had no foundation for setting the amount of child support arrearage at $10,000. The State contends that Loomis never denied that he owed the $13,000 in back child support and the court never indicated why it reduced the $13,000 total by $3,000. The State contends that retroactive modification of support is not permitted by Montana law.

Loomis argues that Willoughby's appeal in this action is untimely because the original order setting the $10,000 amount is dated October of 1987. Further, Loomis cites several maxims of jurisprudence to fortify his contention that Willoughby's failure to file a notice of entry of judgment concerning that order prevents her from filing an appeal now.

The Attorney General filed Willoughby's appeal on June 8, 1993. According to Rule 5, M.R.App.P., when the State is a party to a lawsuit, appeal must be taken within 60 days from the order

5

appealed from or 60 days from the notice of entry of judgment. The time for appeal does not begin to run until the notice of entry of judgment has been entered. El-Ce Storms Trust v. Svetahor (1987), 223 Mont. 113, 724 P.2d 704. The record contains no notice of entry of judgment. We conclude that the appeal has been timely filed in this case because the final order was dated May 3, 1993, and the record contains no notice of entry of judgment.

The pivotal question, however, is whether the District Court had jurisdiction to order Loomis to pay $10,000 instead of the $13,000 he owed in back child support. This present action was filed pursuant to §§ 40-5-101, MCA(1987), et seq., which is the Montana Revised Uniform Reciprocal Enforcement of Support Act (RURESA). Willoughby filed the action in 1987, nine years after the original divorce had been granted with an attendant child support provision for $125 per month. No payments of child support were made prior to the date of filing this action.

This Court has determined that each child support payment "becomes a judgment debt similar to any other judgment for money." In re Marriage of Sabo (1986), 224 Mont. 252, 254, 730 P.2d 1112, 1113; In re Marriage of Hooper & Crittendon (1991), 247 Mont. 322, 327, 806 P.2d 541, 544. As such, a party has ten years to execute on a judgment. Section 27-2-201(1), MCA. We have specifically determined that this ten-year statute of limitations applies to actions by one parent against another for child support arrearage. Hooper & Crittendon, 247 Mont. at 327, 806 P.2d at 544.

The District Court quoted Blakeslee v. Horton (1986), 222

6

Mont. 351, 722 P.2d 1148, for the proposition that equity prevents the mother from seeking payment of support after nine years. While the Blakeslee Court applied equitable principles for a 14-year delay in seeking support arrearage, the case was decided several months before Sabo which determined that each individual support payment is a money judgment and, therefore, subject to the ten-year statute of limitations for money judgments. Section 27-2-201(1), MCA. However, even under the Sabo interpretation, Blakeslee would have been decided similarly because the ten-year limit had been exceeded. We conclude that the District Court erroneously relied on Blakeslee.

The District Court also modified the total amount of child support arrearage owed to the custodial parent by reducing the total $3,000. The controlling statute is § 40-4-208(1), MCA, which we have interpreted to mean that courts can only modify a child support judgment prospectively. Hooper & Crittendon, 247 Mont. at 324, 806 P.2d at 543. The District Court changed the arrearage total by merely stating that $10,000 was a "reasonable" amount.

While it is true that petitioner asked for a "reasonable amount" of the money owed to her, such a request does not take precedence over established law. That law specifically prohibits courts from retroactively modifying child support by any amount.

Loomis requests application of equity. We have utilized principles of equity previously to carve an exception to § 40-4-208, MCA's prohibition against retroactive modification by applying equitable parameters in extraordinary circumstances. Such

7

extraordinary circumstances involve a situation in which both parents agree to a modification in child support and the agreement is observed by both parents over a period of years. Hooper & Crittendon, 247 Mont. at 324, 806 P.2d at 543.

The record before us indicates that Willoughby and Loomis have not engaged in any such agreement. Of greater importance is Loomis' admission that he owes the full amount of $13,000. Because the parents have not judicially modified the child support nor mutually agreed and acted upon any changes to the original order, the District Court, under the statutes in effect at the time of this action, cannot sua sponte retroactively modify an earlier support order from another jurisdiction by issuing a contemporary RURESA order. We note that the 1993 Legislature has now changed the procedure by which the courts of one state can modify support orders of another. Section 40-5-194, MCA(1993).

We conclude that the District Court must enforce the original amount owed to Willoughby, from date of the original support order in 1978 until the filing of the RURESA action in 1987. We therefore, hold that the District Court erred in determining that Loomis should pay $10,000 in child support instead of the $13,000 actually owed. Because the District Court acted beyond its jurisdiction, we reverse and remand.

II

Did the District Court err by ordering the child support paid into a trust for the educational purposes of the child?

Neither party in this action sought a trust. The District

8

Court on its own established a trust for the minor child to be paid to the child at the age of majority. On appeal, Willoughby argues that in creating the trust, the court modified the original support order inappropriately. Loomis argues that the decision to create a trust occurred six years ago and that this Court cannot now change that order.

Because an appeal was taken within the allotted statutory time for filing of an appeal, Loomis's argument is incorrect. In addition, we have already stated that the District Court cannot modify support orders retroactively, except in certain situations. Creating the trust was a modification not sought by the parties nor ordered by the court in the original divorce decree.

The court designated the trust to be used for the child's education. Support is a sum of money paid to the custodial parent to be used for the child; the manner in which child support is to be used is left to the discretion of the custodial parent. Williams v. Budke (1980), 186 Mont. 71, 75, 606 P.2d 515, 517. The court erred in creating a trust for the child because neither party had asked that such a trust be created.

Loomis argues that Williams is not applicable because it is not a RURESA case. Williams was decided pursuant to § 40-4-208(1), MCA, which has been a part of our law in this state since 1975. Despite the 1993 modifications to the Uniform Act, this statute has remained intact to this day. The statute states in pertinent part:

> " . . . decree may be modified by a court as to maintenance or support only as to installments accruing subsequent to actual notice to the parties of the motion for modification." (Emphasis added--"to actual notice to

9

the parties" has been added since 1975 and remains in the 1993 version).

We conclude that whether in Williams or in the present case, the law remains the same: a court cannot retroactively change a prior support order--whether by instituting deferred payments of the arrearage as in Williams or by setting the manner in which amount of arrearage owed can be used such as in this case of establishing a trust for educational purposes.

We hold that the court erred in creating a trust for the educational purposes of the child.

## III

Did the District Court err when it discharged the State of Montana as a party to this action under the applicable version of RURESA?

In its March 18, 1993 order, the District Court dismissed the State of Montana from the action and warned that neither Willoughby nor her daughter would be permitted to involve the State in future actions. The court gave no justification for this dismissal. The State argues that the court was without the jurisdiction to dismiss it. The State contends that the law clearly mandates that it is precisely the county attorney under the supervision of the Attorney General who must prosecute this case.

Loomis argues that the statute provides that the county attorney (prosecuting attorney) can only prosecute the case when asked to do so by the court or by certain public organizations. According to Loomis, Willoughby herself sought help from the county attorney and cannot, therefore, benefit from the request as she was without legal right to make the request.

10

Statutes may not be interpreted to defeat their intent or purpose; the object sought to be achieved by the legislature is our prime consideration in interpreting them. Montana Talc Co. v. Cyprus Mines Corp. (1987), 229 Mont. 491, 748 P.2d 444. In order to determine the intent of the legislature, we must read legislation as a whole. State v. Magnuson (1984), 210 Mont. 401, 682 P.2d 1365. Further, the uniform act itself states that the Act should be construed so as to effectuate the Act's general purpose. 9B U.L.A. §968, 1968 RURESA §41.

RURESA has now been preserved in some form by all fifty states. J. Gorham, Stemming the Modification of Child-Support Orders by Responding Courts: A Proposal to Amend RURESA's Antisupersession Clause, 24 University of Michigan Journal of Law Reform 405 (1991). The intent of the original act remains the same throughout the country. The purpose behind uniform support enforcement is to prevent non-custodial parents from escaping their financial responsibilities by moving to another jurisdiction. Until last year in Montana, "another jurisdiction" included another county. Section 40-5-134, MCA(1987), repealed in 1993; T. Christie, 50 Montana Law Review, Child Support Enforcement in Montana, 165 (1989). The purpose of RURESA in Montana has been to improve and extend reciprocal support enforcement legislation, between jurisdictions. Section 40-5-102, MCA(1987).

In order to improve prosecution across state lines, as well as intra-state county lines, the 1987 version of RURESA called for the use of public officials as prosecutors. The term "prosecuting attorney" is used throughout the 1987 version of RURESA and is

11

defined as "the public official in the appropriate place who has the duty to enforce criminal laws relating to the failure to provide for the support of any person." Section 40-5-103(8), MCA(1987). This definition has been maintained by the new legislature in § 40-5-103(15), MCA(1993).

Inherent in the use of public officials to prosecute these cases is the understanding that a custodial parent many times cannot enforce support orders if they must hire private counsel to prosecute in another jurisdiction, nor would many parents have money themselves to travel to other jurisdictions repeatedly. L. Hughes, Interstate Enforcement of Support Obligations Through Long Arm Statutes and URESA, 18 Journal of Family Law 537 (1980).

Loomis argues to us that Willoughby cannot herself approach the county attorney and ask him to prosecute for her. Section 40-5-139(1987), MCA, stated:

> **Official to represent obligee.** (1) If this state is acting either as a rendering or a registering state, the prosecuting attorney, upon the request of the court, a state department of social and rehabilitation services, a state department of family services, a county commissioner, or other local welfare official, shall represent the obligee in proceeding under this part. (Emphasis added.)

Section 40-5-139, MCA(1987), repealed in 1993. This section also applied to counties in Montana pursuant to § 40-5-134, MCA.

At Willoughby's request the Jefferson County Attorney here petitioned the District Court of Jefferson County to certify the action to Beaverhead County where the Beaverhead County Attorney then continued representation of Willoughby, obligee under the statute. The foregoing statute does not list the obligee among the

12

persons named as entitled to request the services of the prosecuting attorney. As a result there is no statutory obligation on the part of the county attorney to act when requested by obligee Willoughby. As a result, the choice to represent Willoughby rested with the prosecuting attorney. Neither county attorney refused to act and proceeded with the representation of Willoughby as obligee. We conclude that the initiation of the request by the obligee did not controvert the act in such a manner as to prohibit the prosecuting attorney from acting. We conclude there was no statutory violation when the county attorney as prosecuting attorney represented the obligee under the act.

In 1987 and through 1992, RURESA called for State participation in these suits through the office of the prosecuting (county) attorney. The 1993 Legislature has repealed § 40-5-135 and 139, MCA, thus removing from the State the wide discretion that it had to act in these cases. The distinctions that we make in the present case are no longer the law of Montana. Future cases must await specific interpretation of the new modifications to RURESA. We hold that the District Court erred in discharging the State of Montana as a party to this action under the applicable version of RURESA.

IV

Did the District Court err in determining that the child had reached the age of majority and was now the real party in interest?

The District Court determined that the action for child support no longer existed once the court handed down a judgment. The court stated that the doctrine of "merger" acted to change the

13

character of the action itself from one of child support to one of action on a judgment. The court indicated that it was the child who had now reached the age of majority who had the power to obtain the judgment.

Willoughby argues on appeal that the aforementioned court order is contrary to the purpose of RURESA which is to extend the custodial parent's remedies, not to terminate them. Loomis argues that the court never held that the child was the real party in interest.

It is clear from the District Court's order of March 1993, that it considered the child the real party in interest:

> The child in question is now an adult. As the beneficiary of the judgment, she can enforce it in her own right. . . . The court wonders if the mother has any standing to enforce the judgment in the absence of a consent and authorization by the now adult beneficiary.

The court erroneously mischaracterizes what has happened.

The 1987 version of RURESA clearly gave the Attorney General jurisdiction to appeal to this Court any support order that the State believed to have been made erroneously or that contains a question of law. Section 40-5-135, MCA(1987), Here, the county attorney filed the appeal on behalf of the Attorney General. It is obvious from the briefing in this case that the Assistant to the Attorney General believed that the actions engaged in by the District Court "warranted an appeal in the public interest." Considering that we have reversed on all issues, such an evaluation is correct.

This action is, therefore, an appropriate appeal of a district court RURESA order pursuant to the 1987 version of RURESA. As such

14

it is an appeal from a child support order. The District Court completely mischaracterizes the action by quoting a leading treatise on judgments:

> a valid and final personal judgment is conclusive between the parties <u>except on appeal</u> - to the following extent: (1) If the judgment is in favor of the Plaintiff, the claim is extinguished and merged in the judgment, and a new claim may arise on the judgment. (Emphasis added.)

This does not mean that the State cannot file an appeal. The 1987 Legislature specifically and clearly gave the State of Montana jurisdiction to appeal any district court support order under RURESA. Section 40-5-135, MCA.

The aforementioned passage from the Restatement of Judgments cannot be interpreted to indicate that the State cannot appeal. If anything it speaks to the plaintiff's continuing ability to re-prosecute a legal issue which has already been settled by a court. Furthermore, the passage does not speak at all to the situation before us—which is one in which the Attorney General, not the successful plaintiff, has chosen to appeal a RURESA order of the District Court.

We have previously stated in this opinion that support is to be paid to the custodial parent for the purpose of aiding the child; but we will not tell the custodial parent how to spend the money that has been awarded. <u>Williams</u>, 186 Mont. at 75, 606 P.2d at 517. The money used by Willoughby to care for her minor child, came exclusively from her own sources. The court ordered Loomis to provide support at a sum certain each month and he did not comply with the order. But it is not within the court's discretion to bypass the custodial parent. We have previously

15

stated that where the father has been obligated by divorce decree to pay support to the mother, the father cannot discharge his duty by giving the money to the child directly. Oregon ex rel. Worden v. Drinkwalter (1985), 216 Mont. 9, 700 P.2d 150.

We conclude that the action before us is an appropriate appeal filed by the Attorney General for the State of Montana under an earlier version of RURESA and that the appeal concerns an erroneous support order entered by the District Court and that the appeal concerns matters in the public interest. We also conclude that Willoughby shall receive the arrearage. Therefore, we hold that the District Court erred in determining that the child had reached the age of majority and was now the real party in interest.

Reversed and remanded for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
_____
_____
_____
Justices

16