No. 94-191

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN RE THE MARRIAGE OF:

KIMBERLY ANN SYVERSON,

      Petitioner/Respondent,

and

MICHAEL SHERMAN SYVERSON,

      Respondent/Appellant.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and for the County of Fergus,
The Honorable Roy C. Rodeghiero, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Timothy J. O'Hare, O'Hare Law Firm, Lewistown, Montana

      For Respondent:

          Joan Meyer Nye, Nye & Meyer, Billings, Montana; Ann Hefenieder, Special Assistant Attorney General, Child support Enforcement Division, Billings, Montana

Submitted on Briefs: August 15, 1996

Decided: January 3, 1997

Filed: JAN 03 1997

FILED

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

The marriage of Kimberly Ann Syverson (Kimberly) and Michael Sherman Syverson (Michael) was dissolved pursuant to a decree issued by the Tenth Judicial District Court, Fergus County. Subsequently, Michael moved the court for a modification of child support, and Kimberly moved the court for a modification of both child support and the parties' child custody arrangement. Michael appeals the District Court's disposition of the parties' respective motions.

We affirm in part and reverse in part.

The following issues are presented for our review:

1. Did the District Court err in awarding Kimberly day care expenses incurred as an incident to her status as a student?

2. Did the District Court err in its defacto denial of Michael's motion for modification of child support?

3. Did the District Court err in granting Kimberly's motion for modification of child support?

4. Did the District Court err in failing to award Michael the exclusive right to claim the children as his dependents for federal and state income tax purposes?

5. Did the District Court err in its excessive modification of the custodial plan?

FACTS

Kimberly and Michael were married in Minnesota in 1983. The couple have three children: Rebecca, born March 30, 1984; Kaydee,

2

born May 11, 1986; and Amy, born March 19, 1988. The Syverson family made Lewistown, Montana its home.

In 1992, Kimberly and Michael sought a dissolution of their marriage, and on July 24, 1992, the parties executed a "Property Settlement and Custody Agreement" (Agreement). In relevant part, the Agreement provided that the parties would have joint custody of the children, and that they would divide as equally as possible the actual physical custody of the children; the Agreement provided that Michael would have physical custody of the children for a total of 160 days out of the year.

The Agreement also provided that Michael would be responsible for monthly child support payments of $475, but that, in light of Michael's anticipated job change, the parties' child support obligations could be reviewed upon the request of either party. In addition, the Agreement provided that Michael would be responsible for a share of the children's day care costs. The Agreement defined "daycare" as "those child care costs incurred for the control and supervision of the child during the parent's hours of employment."

Finally, the Agreement provided that each party would claim one child as a dependent for tax purposes, and that the parties would alternate annually claiming the third child as a dependent. The court adopted and incorporated the Agreement in its decree of dissolution dated July 28, 1992.

At the time the marriage was dissolved, Michael was employed in the construction business, earning about $30,000 per year. Kimberly was a secretary for the local school district and earned almost $18,000 per year. A few months after the marriage was

3

dissolved, in February 1993, Michael, as was anticipated, changed employment. His income from his new employment with the Montana State Highway Department was $22,692 per year, which he supplemented by undertaking various construction jobs. On May 3, 1993, Michael filed "Amended Motions" for modification of child support, requesting that his child support payment obligation be lowered in accordance with his decreased salary.

On August 10, 1993, Kimberly filed a counter-motion for modification of visitation and child support, based on her intention of moving to Billings, Montana to attend school. Kimberly quit her secretarial position and on August 15, 1993, moved with the three children to Billings where she enrolled at Eastern Montana College as a full-time student. To manage her daily living expenses, and to pay for her tuition, Kimberly obtained student loans, federal tuition grants, subsidized housing, and other public assistance.

On November 18, 1993, the court heard the parties' pending motions. Counsel for Michael and Kimberly were present at the hearing, as was Ann Hefenieder, on behalf of the Department of Social and Rehabilitation Services, Child Support Enforcement Division (Ms. Hefenieder became involved in the proceedings once Kimberly began receiving public assistance monies). On November 29, 1993, Ms. Hefenieder filed a proposed child support calculation, which recommended that Michael's child support obligation be calculated at $183.41 per month, per child. Ms. Hefenieder calculated her child support obligation figures in part

4

by imputing no income to Kimberly and by allowing Michael "four exemptions:" himself and the three children as dependents.

On November 30, the court issued its partial findings of fact, conclusions of law and order, by which it set out a visitation schedule that provided Michael with 75 days of physical custody of the children, required Michael to continue paying his present share of child care costs while Kimberly was in school, and continued Michael's child support obligation previously established by the decree of dissolution. On December 15, 1993, the court issued its supplemental findings of fact, conclusions and order, setting Michael's child support obligation at $550.25 per month, based in part on Ms. Hefenieder's recommendation.

On February 8, 1994, Michael filed a document entitled "Motions," by which he requested the court to vacate and reconsider its partial findings of fact, conclusions of law and order, and its supplemental findings of fact, conclusions and order. In that document, Michael requested that he be allowed to claim all three children as dependents, and also offered essentially the same arguments on the same issues as we have been asked to review here. On March 25, 1994, the District Court denied Michael's "Motions."

On April 11, 1994, Michael filed with this Court his notice of appeal of the District Court's partial findings of fact, conclusions of law and order, the court's supplemental findings of fact, conclusions and order, and the court's March 25, 1994 order. On October 14, 1994, we ordered that the case be remanded to the District Court for a hearing to determine if a case that this Court decided after the District Court's disposition of the matter, In re

5

the Marriage of Johnson (1994), 266 Mont. 158, 879 P.2d 689, had any bearing on the court's modification of custody. The District Court held a hearing in accordance with our order, and on December 15, 1995, issued its "Order and Memorandum on Remand Regarding Johnson Decision", concluding that Johnson did not apply to the instant case.

Presently, the parties and Ms. Hefenieder have stipulated to the five issues presented by Michael for our review. The parties have further stipulated that Ms. Hefenieder, on behalf of the Montana State Department of Social and Rehabilitation Services, Child Support Enforcement Division, shall address and brief issues one, two, and three, and that Kimberly shall address and brief issues four and five. The question of the applicability of Johnson is relevant to Issue Five and will be discussed in that portion of this Opinion.

ISSUE ONE

Did the District Court err in awarding Kimberly daycare expenses incurred as an incident to her status as a student?

In both its partial and supplemental findings and conclusions, the court ordered that Michael pay 65% of the daycare costs Kimberly incurs while she is in school. This is the same percentage of daycare that Michael initially agreed to pay pursuant to the Agreement. However, Michael argues that the court was in error because the Agreement provided that he only pay "those child care costs incurred for the control and supervision of the child during the custodial parent's hours of employment." Michael contends that because Kimberly, the custodial parent, is an

6

unemployed student, the care of the children while she maintains that status is not "daycare" as defined in the Agreement. Therefore, Michael argues, he is relieved of his daycare obligation so long as Kimberly is unemployed. Michael asserts that the court committed reversible error in requiring him to pay for daycare in spite of this provision in the Agreement. We disagree.

The responsibility for child care costs is an important part of a parent's child support obligation. See In re the Marriage of Noel (1994), 265 Mont. 249, 875 P.2d 358. Our standard of review of a ruling establishing or modifying a child support obligation is whether the district court abused its discretion. Noel, *875* P.2d at 359 (reviewing a ruling establishing a child support obligation); In re the Marriage of Kovash (1995), 270 Mont. 517, *521,* 893 P.2d 860, *862-63* (reviewing an "overall decision" modifying a child support obligation). We must determine whether the court abused its discretion in requiring Michael to continue to pay a portion of the child care costs incurred while Kimberly is unemployed and in school.

Michael first argues that the Agreement signed by the parties only creates an obligation for child care costs incurred while the custodial parent is *employed.* *However,* it is well established in Montana that where the interests of minor children are concerned, a district court is not bound by an agreement reached by the parties pursuant to a dissolution proceeding. Section 40-4-201(2), MCA; see also In re the Marriage of Carlson (1984), 214 Mont. 209, *217,* 693 P.2d 496, 500. That in this context the District Court's

7

ruling was in any way inconsistent with the Agreement does not alone require us to find the court in error.

However, Michael also argues that the definition of "daycare" in the Agreement conforms to § 46.30.1525(1)(a), ARM (Child Support Guidelines), which allows child care costs to be considered in calculating a child support obligation when a custodial parent "must incur child care expenses for [the] child as a prerequisite to employment." Michael contends that the language of this rule prohibits the court from ordering him to pay a portion of the child care costs while Kimberly is an unemployed student. Michael's contention, strictly interpreting the language of the rule and the purpose of the Child Support Guidelines, misses the mark.

We have held that "a district court must apply its discretion [in establishing a child support obligation] in a realistic manner, taking into account the actual situation of the parties." Noel, 875 P.2d at 359 (citation omitted). Our review reveals that the court's ruling here addressed the reality of Michael's and Kimberly's respective situations. Michael is employed and earning income while Kimberly is attending school, attempting to obtain a degree. Kimberly claims that her school attendance is sparked by a desire to eventually improve her financial position. We recognize a parent's right to attempt to improve her financial position, even if doing so results in a temporary decrease in present income. See In re the Marriage of Rome (1981), 190 Mont. 495, 621 P.2d 1090. We note that the Child Support Guidelines are in accord in this respect, preventing, when calculating child support obligations, the imputation of income to a parent "engaged in a plan of economic

self-improvement, including but not limited to education and retraining, which will result, in a reasonable time, in an economic benefit to the children for whom the support obligation is being determined." Section 46.30.1513(2)(d)(iii), ARM.

Kimberly's studies require her to incur child care expenses. The court heard testimony concerning the amount of these expenses. The record clearly establishes the parties' respective financial situations. The District Court specifically found that

> though under the Uniform Child Support Guidelines, [Michael] would be required to pay 100% of the daycare costs in addition to his child support, such an order would be inequitable. Based upon the evidence and the facts and circumstances of this particular case, the Court orders that daycare costs be apportioned 65% to [Michael] and 35% to [Kimberly].

The District Court's apportionment of the parties' respective responsibilities for child care costs demonstrates the "employment of conscientious judgment." See In re the Marriage of Goodman (1986), 222 Mont. 446, 448, 723 P.2d 219, 220 (defining test of abuse of discretion). The District Court did not abuse its discretion in ordering Michael to continue paying a portion of the child care costs incurred while Kimberly is unemployed and attends school.

ISSUE TWO

Did the District Court err in its defacto denial of Michael's motion for modification of child support?

Michael argues that the Agreement plainly provides that his change in employment triggers a modification of his child support obligation, upon his request. Michael contends that because the

9

court did not modify his child support obligation as he recommended in his "Motions" document, and as mandated by the Agreement, the court abused its discretion. We disagree.

The provision in the Agreement to which Michael refers states, in pertinent part:

> It is anticipated that [Michael] shall be changing employment in the foreseeable future; and that, upon such event and effective thereon, the child support obligations of the parties hereto shall be reviewed upon request of either party hereto.

The language here plainly requires only a review of the parties' child support obligations, not a particular modification of those obligations. In any event, we reiterate this Court's position that, with respect to matters concerning minor children, district courts are not bound by agreements reached by the parties. Carlson, 693 P.2d at 500.

At the hearing on Michael's and Kimberly's respective motions, the court heard testimony concerning Michael's employment change and decreased salary, as well as testimony concerning Kimberly's school attendance and receipt of public assistance monies. Prior to issuing its supplemental findings and conclusions, the court received Ms. Hefenieder's recommendations regarding child support. The court reviewed all of this information and then ruled that Michael's monthly child support obligation be increased by about $100. That Michael may have initially assumed, reasonably or not, that the court would eventually modify his child support obligation so that he would be responsible for a lesser monthly amount is not a ground for reversal here; in ruling as it did, the court

10

considered all of the information before it, including Michael's change of circumstances, as well as Kimberly's change of circumstances and Ms. Hefenieder's recommendations. We conclude that the District Court did not abuse its discretion.

ISSUE THREE

Did the District Court err in granting Kimberly's motion for modification of child support?

As to this issue, Michael presents two basic arguments. First, Michael argues that the court had no jurisdiction over Kimberly's motion for modification of child support. This argument is premised on Michael's contention that the District Court should have granted his motion for modification of child support. We have already affirmed the court's disposition of Michael's motion. We need not further address this first argument raised by Michael.

Alternatively, Michael argues that even if the court properly denied his motion and granted Kimberly's motion, it nevertheless erred in its income calculations. Specifically, Michael contends that the court erroneously imputed no income to Kimberly, and erroneously attributed to him income from his construction "side jobs." In addition, Michael contends that these errors constituted variances from the Child Support Guidelines, and that the court further erred in failing to state its reasons for the variances.

At the outset, we must state our disagreement with Michael's argument that the courts allegedly erroneous income calculations were variances from the Child Support Guidelines, and that the court therefore had a duty to state its reasons for the variances. Our review of the record establishes that the income calculations

11

here were made pursuant to the guidelines; the particular decisions the court made in its calculations, to include some income but exclude other income and to impute income to one party but not another, were made within the confines of the guidelines.

Michael notes that Kimberly, as a student, receives various types of financial aid. While Michael concedes that most of this aid is in the form of loans, must be repaid, and thus cannot be considered income, he does argue that one financial aid payment, a Pell Grant, need not be repaid by Kimberly and thus must be considered income. Each semester, $958 of the $975 Pell Grant Kimberly received was used to pay tuition at Eastern Montana College; $17 remained each semester for Kimberly's personal use. Section 46.30.1513(2)(e), ARM, provides:

> Although income is not imputed under subsection (2)(d), actual income, including grants, scholarships, third party contributions or other money *intended to subsidize the parent's living expenses* and which are not required to be repaid at some later date, should be included in gross income. (Emphasis added.)

According to this rule, the $17 that remained each semester for Kimberly's personal use should have been included as income. Ms. Hefenieder did not include this amount as income in her child support calculations, but this mistake, and the court's subsequent adoption of it, does not amount to reversible error.

Michael also argues that Kimberly does not fall within the "protection" of § 6.30.1513(2)(d)(iii), ARM, which states that:

> (d) Income should not be imputed if any of the following conditions exist:
>
> (iii) the parent is engaged in a plan of economic self-improvement, including but not limited to education and

*12*

> retraining which will result, within a reasonable time, in an economic benefit to the children for whom the support obligation is being determined.

Michael contends that this rule cannot apply to Kimberly because she has no "planned course of study," failed to "present evidence as to the job opportunities that she would gain through this education," and because she failed to "present evidence as to what the entry level income would be for those job opportunities." Michael claims that Kimberly has "completely failed to meet her burden of proof." We disagree.

Kimberly sought to continue her education, education being one of a number of possible examples of a "plan of self-improvement." Section 46.30.1513(2)(d)(iii), ARM. We do not read this rule as requiring a parent to present a blueprint of her intended career and earnings in order to "meet her burden of proof." Moreover, while the district courts must adhere to the applicable rules within the Child Support Guidelines, § 40-4-204(3)(a), MCA, the degree of discretion afforded district courts in family law matters is well established in Montana. See In re the Marriage of *Dishon* (Mont. 1996), 922 P.2d 1186, 53 St.Rep. 816 (court's exercise of discretion in light of its duty to adhere to the Child Support Guidelines). The record shows that Kimberly, a freshman at the time of the proceedings, was considering a career in either education or social work. The District Court found that Kimberly entered school "not to avoid payment of child support, but rather to better herself economically which will benefit both her and the children in the future." The court also found that "[i]t would not

13

be equitable to impute income for the benefit of the children when the income does not exist." We conclude that the court did not abuse its discretion when it determined that Rule 46.30.1513(2)(d)(iii), ARM, applied to Kimberly, and in accordance with that rule did not impute income to her.

Michael also argues that the court erred in attributing to him income from his periodic construction side jobs. In addition to his salary from his employment with the Department of Highways, Michael received income from various side jobs he undertook "out of financial necessity." Michael contends, citing § 46.30.1515(3)(a), ARM, that because these side jobs "were not accomplished over 'a period sufficient to accurately reflect the parent's earning ability,"' the income received from these jobs should not have been considered in the child support calculations. Michael's contention is based on a misinterpretation of the rule; rather than arguing whether the court should or should not have averaged or projected his side job income, Michael simply argues that his side job income should not have been included as gross income. The cited rule states:

(3) To the extent possible, gross income and expenses should be annualized to avoid the possibility of skewed application of the guidelines based on temporary or seasonal conditions. Income and expenses may be annualized using one of the two following methods:

(a) seasonal employment or fluctuating income should be averaged over a period sufficient to accurately reflect the parent's earning ability. However, income should not be averaged if a reduction is due to circumstances beyond a parent's control such as a plant closure; or

(b) current income or expenses may be projected when a recent increase or decrease in income is expected to continue for the foreseeable future. For example, when

14

> a student graduates and obtains permanent employment, income should be projected at the new wage.

Section 46.30.1515(3), ARM. We briefly discussed this rule in In re Pedersen (1993), 261 Mont 284, 862 P.2d 411, where we upheld a district court's determination of gross income, a determination reached by averaging the party's income over the prior two years. We stated that "§ 46.30.1515(3), ARM, expressly allows fluctuating income to be annualized by averaging it over a period sufficient to accurately reflect earning ability." Pedersen, 862 P.2d at 413.

The court here did not average Michael's income, because it was not prompted to do so. The financial information provided here established that Michael's Department of Highways salary was about $23,000, and that he received approximately $2,500 more from his side jobs. The calculations which the court adopted did not average Michael's side job income; rather, the calculations merely included as gross income the actual amounts that Michael stated that he had received. See § 46.30.1508, ARM. The court properly calculated the child support obligations based on the information before it. Platt v. Platt (1994), 267 Mont. 38, 41, 881 P.2d 634, 636. Michael's argument misses the mark. The court did not abuse its discretion.

### ISSUE FOUR

Did the District Court err in failing to award Michael the exclusive right to claim the children as his dependents for federal and state income tax purposes?

15

The Agreement provides that Michael and Kimberly each claim one child as *a* dependent for tax purposes, and that the parties alternate on an annual basis claiming the third child as a dependent. However, Ms. Hefenieder, in calculating her child support recommendations in light of the parties' changed circumstances, assumed that Michael would be allowed to claim all three children as dependents, at least while Kimberly retained her unemployed student status. The court fully adopted Ms. Hefenieder's recommendations in ruling on the motions for modification before it. Later, Michael filed a motion in which he specifically requested that he be allowed to claim all three children as dependents. This motion, and all other post-hearing motions Michael filed, were denied.

Michael argues that the court abused its discretion because although on the one hand it accepted Ms. Hefenieder's child support calculations, which were based in part on imputing no income to Kimberly and allowing Michael to claim the children as dependents, the court on the other hand later refused Michael's request to claim the children as dependents. In her brief submitted to us, Kimberly stipulates that Michael be allowed to claim the children as dependents while she attends school. As the District Court's denial of Michael's request to claim the children as dependents was cursory and without explanation, and as Kimberly and Ms. Hefenieder in fact agree with Michael as to this issue, we must reverse and remand this issue to the District Court so that the court may revise its order to allow Michael to claim the children as dependents while Kimberly attends school.

16

ISSUE FIVE

Did the District Court err in its excessive modification of the custodial plan?

Our resolution of this issue requires us to conduct two inquiries. First, we must review the District court's determination, pursuant to our order of October 14, 1994, that the Johnson decision does not apply to or affect the instant case. Second, based on our conclusion as to the first inquiry, we must review the court's modification of the custodial plan, where the court reduced from 160 to 75 the number of days per year that Michael would have physical custody of the children.

The court's conclusion that Johnson is inapplicable to and does not affect this case is a conclusion of law. The standard of review of a district court's conclusion of law is whether the court's interpretation of the law is correct. Carbon County v. Union Reserve Coal Co. (1995), 271 Mont. 459, 898 P.2d 680.

By order dated October 14, 1994, we remanded this case to the District Court for a determination of whether the Johnson decision applies to this case. In Johnson, the custodial arrangement as established by the dissolution decree provided for joint custody, but awarded Jerome physical custody of the children and provided Barbara with the right of reasonable visitation. Following the dissolution of the marriage, Barbara moved from the family's hometown of Roy to Billings in order to attend college. During this time, the children resided, on a yearly basis, with Jerome for nine months and with Barbara for the remaining three summer months. Barbara did not complete college, but moved to Lewistown where she

17

became a manager of a fast food restaurant. Barbara then moved the court to modify the custody arrangement, awarding her physical custody of the children and granting Jerome visitation rights. The court granted Barbara's motion. The issue in <u>Johnson</u> pertinent to our discussion here was as follows:

> When a party to a former dissolution proceeding moves to amend the decree in a way that substantially changes the residential living arrangements of the former couple's children without seeking a change in the legal designation of "joint custody," is the District Court's decision governed by the "best interest" standard found at § 40-4-212, MCA, or by the "serious endangerment" standard found at § 40-4-219(1)(c), MCA?

<u>Johnson,</u> 879 P.2d at 691. After reviewing **some** of our prior decisions concerning custody modification, decisions which we characterized as "not necessarily consistent with the statutory scheme for modification, nor with each other," <u>Johnson,</u> 879 P.2d at 692, we stated:

> Considering our statutory scheme for modification of custody arrangements, and the rationale for requiring a substantial showing before altering the living arrangements to which a child has become accustomed, and out of concern that the applicable standard for granting a motion to modify custody arrangements is not clear from our prior decisions, we adopt the following standard:
> Motions or petitions to modify a sole custody provision or terminate a joint custody provision must satisfy the jurisdictional prerequisites set forth in § 40-4-219, MCA. Likewise, a motion or petition to modify child custody provisions in a dissolution decree which have the effect of substantially changing the primary residence of the parties' children, even though the formal designation of "joint custody" is retained, are to be construed as motions or petitions to terminate joint custody and must satisfy the jurisdictional requirements set forth in § 40-4-219, MCA. Any effort to modify the physical custody arrangements in a decree which provided for joint custody, which does not seek a substantial change in the children's primary residence, **may** be considered by the district court according to the best interest standard set forth in § 40-4-212, MCA.

18

We conclude that this approach is most consistent with the plain terms of Montana's Marriage and Divorce Act and is most likely to provide for the continuity and stability of children's living arrangements that the Legislature obviously determined to be important when it adopted that Act.

Johnson, 879 P.2d at 694.

On remand, the District Court here concluded that Johnson did not apply to or affect the instant case. The court reasoned that Johnson could not apply where, as here, circumstances demanded that the existing custodial arrangement be reviewed and ultimately modified. The court noted that the existing custody arrangement provided for the children to reside with Kimberly for three weeks per month, and to reside with Michael for the remaining week in the month. At the time of the divorce decree, both Kimberly and Michael lived in Lewistown. Later, Kimberly moved to Billings to go to school; maintaining the same custody arrangement during the school year would require the children to attend a school in Billings for three weeks out of a month, and to attend a school in Lewistown for one week out of a month. The court impliedly concluded that common sense, if nothing else, required that modification under circumstances such as these be reviewed under the "best interest of the child" criteria, § 40-4-212, MCA; introducing §-219's jurisdictional hurdle could lead to some unjust, if not absurd results. The court stated:

Johnson clearly was referring to the transfer of physical custody from the primary custodian to the secondary custodian. Johnson is not applicable to a case where, due to change in circumstances of the joint custodians no longer living in the same community, the physical custody time allocation must, of necessity, be modified. In Johnson there was no such legal necessity.

19

We appreciate the District Court's concern that the application of _Johnson_ to this case, to the extent that _Johnson_ would require § 40-4-219, MCA, to govern the modification question, could lead to an unjust result; if none of the jurisdictional prerequisites of §-219 can first be met, the court cannot reach the "best interest" test and would be unable to modify a custody and visitation arrangement that clearly needs to be modified. Moreover, this is clearly a situation in which the best interests of the children should govern the modification. Finally, it is not modification that the parties dispute; in fact, both parties concede the need to modify the existing arrangement. Rather, it is the particular terms of the modification that the parties dispute.

However, _Johnson_ does apply to this case, as _Johnson_ would apply to any custody modification case; the _Johnson_ decision clarifies this Court's variable approach to child custody cases, where the proper approach depends on the circumstances of the particular case. _Johnson_ was intended to and does have blanket applicability, as our Opinion in that case contains complete coverage and analysis of the custody modification statutes. _Johnson_ dictates that under circumstances like those found in this case, where modification would have the effect of substantially changing the children's primary residence, the court must first meet the jurisdictional requirements of §-219. However, _Johnson_ is not the cause of the District Court's quandary. Rather, it is an inadequacy in §-219 which has created confusion and frustration.

20

Under §-219, a court may proceed to modify a custody decree according to the best interests of the child if it finds that "a change has occurred in the circumstances of the child or the child's custodian," and if it further finds that the custodial parent has moved or intends to move with the child *to another state.* Section 40-4-219(1)(f), MCA (emphasis added). Section 219 does not expressly allow modification if the custodial parent and the child *move within the* state of *Montana,* nor does the statute expressly allow modification if the custodial parent and child move *to another country.* According to s-219, if the custodial parent and the child move from Wibaux, MT, to Beach, ND, a distance of less than 50 miles, the court may modify the custody arrangement. If, however, the custodial parent and the child move from Wibaux, MT, to Libby, MT, a distance of nearly 500 miles, the court may not modify the custody arrangement. In addition, if the custodial parent and the child move from Wibaux, MT, to Lethbridge, Alberta, Canada, the court may not modify the custody arrangement, as s-219 does not provide for such a contingency. Clearly, §-219 is inadequate. Under certain circumstances, a move within Montana's borders may well be more disruptive to the effectiveness of a custody decree than a move outside of Montana's borders. As well, a move outside of Montana's borders to another country would likely be more disruptive than a move outside of Montana's borders to another state.

It is inconceivable to us that the application of §-219 was ever intended to cause such absurd results as illustrated both in our hypothetical and in the case before us. While courts should in

general interpret and apply statutes as they are written, they also have a duty to look beyond the language of a statute if literal application would lead to an absurd result. In Re Unit Portions of Delaware, Inc. (E.D.N.Y. 1985), 53 B.R. 83, 84. "Courts will not foolishly bind themselves to the plain language of a statute where doing so would 'compel an odd result."' Hughey v. JMS Development Corp. (11th Cir. 1996), 78 F.3d 1523, 1529 (citing Green v. Bock Laundry Mach. Co. (1989), 490 U.S. 504, 509, 109 S.Ct. 1981, 1984, 104 L.Ed.2d 557). This court has previously construed, interpreted, and applied the law in order to avoid absurd results. See State v. Schnittgen (Mont. 1996), 922 P.2d 500, 510, 53 St.Rep. 710, 717 (double jeopardy case wherein we stated that "applying the *Halper* test to the instant case would work an obviously absurd result not intended by the Court"); Stroop v. Day (1995), 271 Mont. 314, 318-19, 896 P.2d 439, 441-42 (we refusing to literally interpret the word "provocation" as found in the "Dog Bite" statute, § 27-1-715, MCA, because to do so would "yield unjust and absurd results" (citing Robinson v. Meadows (Ill. Ct. App. 1990), 203 Ill.App.3d 706, 148 Ill.Dec. 805, 561 N.E.2d 111)); Hafner v. Conoco, Inc. (1994), 268 Mont. 396, 403, 886 P.2d 947, 951 (employment discrimination case in which our determination that the district court erred in finding Hafner qualified for his position with Conoco was "guid[ed]" by the court's reasoning in Chandler v. City of Dallas (5th Cir. 1993), 2 F.3d 1385, 1393, cert. denied 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994), that a literal reading of "otherwise qualified" was not favored "because of the absurd results that would be produced"); Montana Dept. of Revenue

22

v. Kaiser Cement Corp. (1990), 245 Mont. 502, 506, 803 P.2d 1061, 1063 (tax case in which we agreed with the Department of Revenue's interpretation of the applicable tax statutes, stating "that to hold otherwise would lead to absurd results"); State v. Trimmer (1985), 214 Mont. 427, 432-33, 694 P.2d 490, 493 ("It has long been a rule of statutory construction that a literary application of a statute which would lead to absurd results should be avoided whenever any reasonable explanation can be given consistent with the legislative purpose of the statute"). Therefore, to avoid an absurd result in this case, and to prevent absurd results in other, similar cases, we establish the following rule:

Our decision in Johnson remains fully applicable in custody modification cases; if a request for modification of a joint custody decree would have the effect of substantially changing the primary residence of the parties' children, the court, before engaging in modification, must first find that the requirements of §-219 have been met. If the court finds that (1) "a change has occurred in the circumstances of the child or the child's custodian," § 40-4-219(1), MCA, and (2) further finds that the custodial parent and the child or children have moved or are going to move from one location to a different location (whether inside or outside of Montana's boundaries), and that this move will hinder the effectiveness of the existing custody arrangement, then (3) §-219's jurisdictional requirements shall be deemed to have been met, and the court may proceed to modify the custody arrangement according to the "best interest" criteria set out in § 40-4-212, MCA.

23

Applying the foregoing analysis to this case, we conclude that Johnson dictates that the requirements of §-219 must be met; a modification that reflects both Kimberly's move with the children from Lewistown to Billings and an 85-day decrease in Michael's custody and visitation of the children certainly amounts to a "substantial change."  We further conclude that §-219's requirements have been met because (1) there has been a change of circumstances which affects the parties and their children, and (2) Kimberly's move with the children to Billings from Lewistown will hinder the effectiveness of the existing custody arrangement.  We must now determine whether the District Court erred in its modification of the custodial arrangement, a modification which Michael characterizes as excessive because his custody of the children was reduced from 160 to 75 days annually.  We consider Michael's characterization within the context of § 40-4-224(2), MCA, which provides, in pertinent part:

> The allotment of time between the parents must be as equal as possible; however
>     (a) each case shall be determined according to its own practicalities, with the best interest of the child as the primary consideration; and
>     (b) when allotting time between the parents, the court shall consider the effect of the time allotment on the stability and continuity of the child's education.

The court employed the "best interest" test, and made the following findings with respect to the custody modification:

> 4.  In August, 1993, [Kimberly] moved with the children to Billings to further her education.  [Kimberly] is now a full time student at Eastern Montana College.
>
> 5.  Since moving to Billings, [Michael] has had visitation of the children on the second and fourth weekends of each month.  This has worked relatively well except for problems exchanging the children between the parents.

24

6. ....
[Michael] shall continue to have visitation on the second and fourth weekends of each month.

8. In addition to weekend visitations, [Michael] and [Kimberly] shall alternate the major holidays as set forth in the Property Settlement Agreement, and [Michael] shall have visitation of the children for the 1993 Thanksgiving break, and [Kimberly] shall have visitation of the children for the first half of the Christmas break, [Michael] to have visitation the second half. Thereafter, holiday vacations shall be alternated between the parties with the travel arrangements as set forth above.

10. Summer visitation by [Michael] shall be during the second week of each month beginning *in* June, as well as the last full weekend of each month during the summer months of June, July, and August. *The Court* finds *the parties'children* are relatively young and all girls, *and* it *is in the best* interests *of the children* that *the* above visitation schedule be implemented. (Emphasis added.)

Michael argues in his opening brief that the court's findings with respect to the "best interest" factors were insufficient Michael contends that the court's "drastic modification" was premised on only one "best interest" finding, unsupported by evidence, that "the parties' children are relatively young and all girls, and it is in the best interests of the children that the above visitation schedule be implemented."

We review a district court's findings relating to custody or visitation modification to determine whether those findings are clearly erroneous. In re the Marriage of Elser (1995), 271 Mont 265, 270, 895 P.2d 619, 622 (citation omitted), *overruled on other grounds by* Porter v. Galarneau, 275 Mont. 174, 185, 911 P.2d 1143, 1150 n.2. "Findings are clearly erroneous if they are not supported by substantial evidence, the court misapprehends the

25

effect of the evidence, or this Court's review of the record convinces it that a mistake has been made." Elser, 895 P.2d at 622 (citation omitted). This Court will reverse a court's decision to modify custody or visitation "only where an abuse of discretion is clearly demonstrated". Elser, 895 P.2d at 622 (citation omitted).

As to Michael's argument that the court erroneously made only one express finding that its modified visitation schedule was in the children's best interests, we have stated that

[a]ll the ["best interest of the child"] statute requires is that the court consider the factors listed. It is not required to make specific findings concerning each element, though it must express "the essential and determining facts upon which its conclusions rest."

In re the Marriage of Fesolowitz (1993), 258 Mont. 380, 388, 852 P.2d 658, 663 (citation omitted). In Fesolowitz, we held that the court's finding that the children "'have successfully adapted to shared custody' and 'have prospered by being with each parent a substantial amount of time each month"' was the "essential and determining fact." Fesolowitz, 852 P.2d at 663. The court here similarly expressed "the essential and determining facts upon which its conclusions rest [ed]," and therefore met this requirement of the "best interest" test.

Contrary to Michael's contention, the court's finding that its modification of the custody arrangement was in the children's best interests was supported by evidence in the record. The court heard testimony concerning, among other things: the parents' wishes regarding custody and visitation; the interaction between the parents and the girls; and the children's adjustment in each home. In addition, the paramount concern for both parties at the outset of these proceedings was that, after Kimberly's move to Billings,

Justice Karla M. Gray, dissenting

I respectfully dissent from the Court's opinion on issue five.

In Johnson, we focused on Montana's public policy, reflected in various legislative enactments, to promote continuity and stability in children's living arrangements. We determined that the legislature intended § 40-4-219, MCA, to promote that public policy by requiring a substantial showing before significantly altering the living arrangements to which a child has been accustomed. We concluded, on that basis, that § 40-4-219, MCA, is applicable to all situations which have the effect of substantially changing such living arrangements and, consequently, that the statutory jurisdictional requirements must be met before a district court may make such a change. Johnson, 879 P.2d at 694.

As a result of Johnson, this Court has two--and only two-- alternatives in resolving issue five in the present case. The first is to apply both Johnson and § 40-4-219, MCA, pursuant to their terms. Choosing that alternative would require this Court to reverse the District Court because the plainly stated jurisdictional requirements of § 40-4-219, MCA, are not met here--a fact which the Court concedes. The second available alternative is to create an exception to Johnson's applicability for circumstances such as those presented here; this alternative would enable us to properly affirm the District Court.

Faced with this difficult choice, the Court staunchly refuses to do either. Instead, it determines that § 40-4-219, MCA, is "inadequate" and then proceeds to rewrite it. The Court does so by deleting the language duly enacted by the Montana legislature

28

addressing the difficulty.

Finally, I submit that the interests of Montana's children in the stability and continuity of their living arrangements cannot be well served by this Court purporting to make up the statutory law of Montana as it goes along. Indeed, the interests of all Montanans in having the three branches of government take actions appropriate to their constitutional spheres, and in the consistency and stability of the laws of this state, are harmed by the Court's action today.

As written, and as the Court agrees, _Johnson_ applies here. Absent a reinterpretation of _Johnson_ to address circumstances such as those presented in this case, we must reverse the District Court.

_____
Justice

Justice James C. Nelson joins in the foregoing dissent

_____
Justice

30

Justice James C. Nelson, dissenting.

I agree that § 40-4-219, MCA, needs to be amended by the legislature to account for circumstances where a custodial parent moves within Montana or to another country. The examples set out in the majority opinion demonstrate very well the inadequacies and absurdities of § 40-4-219(1)(f), MCA, as presently written. Hopefully, the 1997 Legislature will find time, in what already appears to be a busy session, to address this problem.

However, I also agree with Justice Gray's dissent. Having properly concluded that <u>Johnson</u> applies and that, therefore, the jurisdictional requirements of § 40-4-219, MCA, must be met, we are not at liberty to simply rewrite the clear and unambiguous provisions of subparagraph (1)(f) by adding language that is not there and by ignoring the language that is there. Interpreting or applying a statute or a case to avoid an absurd result where the language at issue is capable of more than one interpretation or application is one thing; unashamedly rewriting the statute because the application of its clear language produces what we perceive to be an unacceptable result is a dog of a different breed, however. In those cases, if the statute needs to be fixed--and this one does --then, constitutionally, it falls to the legislative branch to accomplish that.

That said, it strikes me that the problem in this case is our preoccupation in trying to affirm the District Court's elemental conclusion that the children are better off with their mother in spite of <u>Johnson</u> and the requirements of § 40-4-219(1)(f), MCA. I

31

suggest that, perhaps, we are forgetting what prompted our decision in <u>Johnson</u> in the first place.

Our decision in <u>Johnson</u> was grounded in the proposition that:

> [A] child's sense of continuity and stability are equally threatened when that child is uprooted from the only community in which that child has ever resided and relocated in a new household and new school, whether we refer to the change as one of legal custody or merely physical custody.

<u>Johnson,</u> 879 P.2d at 693. Here, Kimberly's move to Billings was what caused the children to be uprooted from the community in which they lived and what caused them to be relocated to a new household and to a new school. Prior to her move, both parents pretty much had equal custody of and access to the children. It was Kimberly's move that disrupted the existing custody arrangement that everyone agreed was in the children's best interests, and it was that move that necessitated a different custody arrangement.

If <u>Johnson</u> is applicable, and we all agree that it is, then it seems to me that simply applying the letter and spirit of our decision produces the correct result. Since Kimberly has failed to meet the jurisdictional requirements of § 40-4-219, MCA, the children should not be required to move to Billings and to a new community, home and school with their mother, but rather they should be allowed to stay in Lewistown in their accustomed home, community and school with their father. In resolving the case in this fashion, the statute is upheld--as it is written; the rule in <u>Johnson</u> is not diluted; and the parent that precipitated this problem is forced to come to grips with the reality that she is going to have to make some hard decisions on where her priorities

lie.

Obviously, this is not a perfect resolution for everyone; there rarely is in these sorts of cases. Nonetheless, given the statutory and case law that we are bound to enforce, I believe that it is the legally correct one.

I dissent from our decision on Issue Five and would reverse on that issue and remand for further proceedings on the other issues consistent with our decision on the custody issue.

_____
Justice