No. 00-478

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 275N

IN RE THE MARRIAGE OF

ROBERT LEE KELLEHER,

Petitioner and Appellant,

and

CHERYL HIGGINS KELLEHER,

Respondent and Respondent.

APPEAL FROM: District Court of the Fifth Judicial District,

In and for the County of Jefferson,

The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Robert C. Kelleher, Sr. a/k/a Robert Lee Kelleher, Butte, Montana (*pro se*)

For Respondent:

Michael D. McLean, Knight, Dahood, McLean & Everett, Anaconda, Montana

Submitted on Briefs: November 2, 2000
Decided: December 19, 2001

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. The decision shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of non-citable cases issued by this Court.

¶2 The Appellant, Robert Kelleher (Robert), appeals from an order of the District Court of the Fifth Judicial District, Jefferson County, denying his motion for an order modifying the previous parenting plan established between Robert and the respondent Cheryl Kelleher (Cheryl) regarding their son, Joseph Kelleher (Joseph). We affirm.

¶3 We address the following issue on appeal: Did the District Court err in its findings regarding Joseph's best interest?

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶4 Robert and Cheryl divorced on December 9th, 1993. The divorce decree indicated that the parties agreed Cheryl would be Joseph's residential custodian. In 1996, Robert petitioned the court to modify this agreement. While we are not concerned with this previous petition here, the parties agreed that Cheryl would remain the residential custodian when they resolved the 1996 petition. In 2000, Robert filed the petition at issue in this case and sought residential custody of Joseph, who is now eight years of age. Robert argued that changes in Joseph's circumstances required modification of the previous parenting plan. The changes cited by Robert included constant changes in Joseph's residences (four moves in three years), and changes in Joseph's day care facilities (three facilities in three years) both of which Robert believed were too disruptive for Joseph. Robert also cited his discovery that Cheryl was receiving and using Joseph's substantial monthly Social Security benefits as support. Joseph receives Social Security benefits of approximately $650 per month under 42 U.S.C. 402(d) (1994), because he is a

minor dependent of Robert, who is now 78 years of age.

¶5 After a mediation between the parties, Robert and Cheryl agreed that she would remain the residential custodian. However, the parties could not agree on two issues. These issues were submitted to the District Court for its determination. These two issues, as presented to the court by Robert and Cheryl at a hearing on the matter and as described by the court in its order, were "[w]here the child is to attend school" and the "[a]llocation of the child's social security benefits."

¶6 Robert asserted that it was in Joseph's best interest to attend private parochial school in Butte at Butte Central. He also asserted that it was in Joseph's best interest to spend part of the Social Security benefits on this private school, $200 per month tuition, and save the rest for Joseph's future education. Robert supported this argument by asserting that spending part of the money on day care facilities, as Cheryl had been doing, was not in Joseph's best interest when Robert could avoid day care costs by taking care of Joseph himself. Cheryl asserted that it was in Joseph's best interest to attend school in Anaconda because that was the place of his residence and that to require him to go to school in Butte would add more disruption to his life.

¶7 In its Findings and Order, the District Court first accepted the terms of the mediation as presented to the court in a settlement memorandum. Further, the court found it was in Joseph's bests interest for Cheryl to have discretion to use Joseph's Social Security funds for his present needs. Finally, the court found that it was in Joseph's best interest to attend school in Anaconda, at least while he was in grade school, because Butte was too far away from Cheryl, his residential custodian. The court also stated that it had no credible evidence showing that Butte Central had significantly more merit than the Anaconda public schools. Robert now appeals the District Court's order.

## II. LEGAL ISSUES NOT PRESERVED FOR APPEAL

¶8 Before we turn to the appropriate standard of review for this case, we must determine what issues were properly preserved for appeal. In his brief on appeal, Robert states many issues for review. In phrasing these issues, Robert mixes questions of fact with questions of law. The legal issues he presents, with the facts assumed established included in the questions, are as follows:

    1. [D]oes Joseph have a statutory and constitutional right to the benefits of a private

school education? (Also phrased as: Can district court statutorily and constitutionally deny Joseph right to attend school offering greater prospect of developing his *full educational potential*?) (Emphasis in original.)

2. If child's "Entitlement" is his property and father is willing to provide day care "for free", does the due process clause of the Fourteenth Amendment of the U.S. Constitution require it be spent on his education rather than on day care?

3. Where statute makes parents liable for support and education of minor child, can parents avoid that duty by using child's own estate for support and paying his day care costs? (Also phrased as: Do Special Circumstances Enhance Duty to Minor to Provide Means to Develop *Full Educational Potential*?) (Emphasis in original.)

4. Does Art. X, Section 1 of the Montana Constitution have the same force and effect as a Bill of Rights guarantee when it *guarantees* Joseph a "fundamental right" to "develop (his) *full educational potential*"? (Emphasis added.)

5. Where Parenting Plan Stipulation makes mother *in nomine* residential custodian, child now spends most of time awake with day care operators, and Stipulation signed by mother refers school choice to decision of district court, does court have jurisdiction to amend Stipulation appointing father residential custodian during the school year? (Also phrased as: Where child spends most of time with day care operators but Parenting Plan Stipulation makes mother *in nomine* residential custodian, does Court have jurisdiction to order father to provide room and board for child during school year?)

Robert asserts that the issues he raises on appeal were preserved. We disagree. Robert also asserts that the facts in the lower court were uncontroverted, and therefore, this Court should have the "plenary power" to consider the legal issues *de novo*. We disagree.

¶9 The general rule is that issues not raised before the trial court and new legal theories are not considered by this Court on appeal because it is unfair to fault the trial court on an issue it was never given an opportunity to consider. *Unified Indus., Inc. v. Easley*, 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15 (citing *Day v. Payne* (1996), 280 Mont. 273, 276, 929 P.2d 864, 866). Our review of the record reveals that none of the legal questions quoted above were argued before the District Court. Further, the District Court did not make its ultimate decision based on any determinations of the above legal

questions.

¶10 While some of these legal questions were presented in the initial brief supporting Robert's petition to modify the previous parenting plan, the questions were not preserved for appeal when the parties, following the mediation, represented to the District Court that the only unresolved issues before the court were the questions of fact which the court ultimately addressed. Further, Robert's testimony at the hearing on the unresolved issues regarding his personal belief that Article X, Section 1 of the Montana Constitution entitles all children to develop their full educational potential and his belief that federal Social Security benefits are to be used for educational purposes did not preserve the legal questions either. Although Robert is an attorney, his testimony was not admitted as expert legal opinion and was merely a reflection of Robert's personal belief that Butte Central would provide a better education for Joseph than the public schools in Anaconda.

¶11 Therefore, because the issues as presented to the court did not require determination of any legal questions, but only required the court to find what was in Joseph's best interest, we will not consider any of the above legal issues in reviewing this appeal. The factual issues Robert presents on appeal are simply considerations involved in the two questions presented to the District Court for its decision. Therefore, we will address whether the District Court erred in its findings in further detail below.

## III. STANDARD OF REVIEW

¶12 Our review of a district court's findings relating to custody or visitation modification determines whether those findings are clearly erroneous. *In re Marriage of Elser* (1995), 271 Mont. 265, 270, 895 P.2d 619, 622 *overruled on other grounds by Porter v. Galarneau* (1996), 275 Mont. 174, 911 P.2d 1143. Similar to our review of findings of fact in other cases, findings in custody modifications are clearly erroneous if not supported by substantial evidence, the court misapprehends the effect of the evidence, or this Court's review of the record convinces it that a mistake has been made. *Elser*, 271 Mont. at 270, 895 P.2d at 622; *see also In re Marriage of Johnson* (1994), 266 Mont. 158, 166-67, 879 P.2d 689, 694 (citing *Interstate Prod. Credit Assn. v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287).

¶13 In this case, Robert seeks what amounts to a custody modification, because Robert asserts that Joseph should attend school near Robert's place of residence in Butte, that Joseph's Social Security funds should go towards tuition at Butte Central, that Robert

should provide day care for Joseph everyday after school, and that Robert should provide room and board for Joseph during the school year. Robert essentially asked the trial court, and now this Court, to modify the custody agreement in a way that would significantly increase his custody of Joseph and would in effect change the sole custody agreement to one similar to joint custody, in which Robert would be in his words "residential custodian during the school year." Therefore, the clearly erroneous standard of review for findings involved in custody modification applies to the instant case.

¶14 The findings of the District Court at issue here concern the findings required by § 40-4-219, MCA, and § 40-4-212, MCA. Section 40-4-219, MCA, allows amendment of a parenting plan if the court "finds, upon the basis of facts that have arisen since the prior plan or that were unknown to the court at the time of entry of the prior plan, that a change has occurred in the circumstances of the child . . . ." In this case, Cheryl did not dispute that the facts cited in Robert's initial motion constituted a change in Joseph's circumstances that qualified under § 40-4-219, MCA, and the court did not make any specific findings on this issue. Therefore, we do not need to review the threshold "change in circumstance" requirement of this section and simply note that Robert met this requirement.

¶15 After finding a change in the circumstances of the child, § 40-4-219, MCA, allows the court to amend the parenting plan if "the amendment is necessary to serve the best interest of the child." To determine the child's best interest, the court may consider the criteria in § 40-4-212, MCA. Section 40-4-212, MCA, requires that "the court shall determine the parenting plan in accordance with the best interest of the child. The court shall consider all relevant parenting factors . . . ." While no specific statutory factors were listed by the District Court in this case, the factors listed in § 40-4-212, MCA, that are relevant to this case include:

    (a) the wishes of the child's parent or parents;

    (b) the wishes of the child;

    (c) the interaction and interrelationship of the child with the child's parent or parents and siblings and with any other person who significantly affects the child's best interest;

    (d) the child's adjustment to home, school, and community;

(e) the mental and physical health of all individuals involved;

. . .

(h) continuity and stability of care;

(i) developmental needs of the child;

. . .

(l) whether the child has frequent and continuing contact with both parents, which is considered to be in the child's best interests . . .

Therefore, §§ 40-4-212 and 219, MCA, require our review in this case to determine whether the District Court's findings regarding Joseph's best interest were clearly erroneous.

## IV. DISCUSSION: Did the District Court err in its findings regarding Joseph's best interest?

¶16 In this case, the District Court accepted the terms of the mediation as presented to the court in a settlement memorandum, which designated Cheryl as the residential custodian. The court then considered two questions, as submitted to it by the parties after their mediation: "[w]here the child is to attend school" and the "[a]llocation of the child's social security benefits." On the school question, the District Court determined:

> The Court specifically finds that it would not be in the best interest of a seven year old to pass up a school two blocks from his residence and attend school involving 54 miles of travel each day and especially so in the absence of credible evidence as to the relative merits of the two school systems. This could very well change on the approach of high school age. The parents are both of the same religious faith, a factor that could become important later involving not only the parents but a teenager who should have input as to where he attends high school.

On the allocation of Social Security benefits, the court determined that "these benefits should be utilized at the discretion of the custodial mother commensurate with need."

## A. The Parties' Positions

¶17 On appeal, both parties reassert the arguments they presented to the trial court. On the school issue, Robert argued that Butte Central has numerous advantages. The advantages Robert cited include smaller class sizes (15 vs. 20), Spanish instruction starting at the first grade level, and religious study as part of the regular curriculum. Robert also asserted that Butte Central would better prepare Joseph for advanced study in sciences and would increase Joseph's post-secondary options. Finally, Robert noted that Butte Central had never had significant problems with violence, while Anaconda public schools had problems with guns and its administration had insufficient resources for additional security measures, according to the local police. Robert cited an independent study which found that private schools tended to have more rigorous academics and more exposure to music and art, greater safety, and fewer students with negative interactions with teachers. On appeal, Robert supplements these arguments with documents demonstrating that Butte Central graduates have high grade point averages after high school and after college and that Butte Central students also have higher than the national average Stanford Achievement Test results.

¶18 Robert argued that attendance at Butte Central would be easy for Joseph because Robert lives only a short distance away. Robert argued that because he is semi-retired he could drive Joseph as necessary and that he had more free time in contrast to Cheryl who works full time. Robert noted that he could afford to provide housing and food for Joseph while Joseph attended Butte Central. Robert also noted that Joseph would have to change schools after first grade in Anaconda, whereas in Butte, Joseph would not have to change schools until he finished grade school. Robert asserted that Joseph is "extremely" smart and was bored at Anaconda public schools. Robert pointed out that Joseph's best friend lives in Butte. Finally, Robert noted that Joseph already spends one evening a week with him.

¶19 On the issue of the use of Joseph's benefits, Robert asserted that it was not in Joseph's best interest to use these benefits to pay for day care that Joseph allegedly feared, especially in light of the fact that Robert had free time during which he could take care of Joseph. Robert also noted that he was Joseph's primary care giver for the first two years of his life when Joseph lived in Butte. Robert noted that the day care operators actually spent more time with Joseph than Cheryl did, and therefore argued the money would be better used by saving it and allowing Robert to care for Joseph. Robert also asserted that it was in Joseph's best interest to spend part of this money on tuition at Butte Central and to save

the rest in order to pay for a college education. Robert noted that the cost of higher education at Carroll College is currently about $18,000 per year. He also noted that he and Cheryl and his six other children were all college graduates and that therefore, post-secondary education would be a priority for Joseph.

¶20 At the hearing, Robert supported his assertions regarding Joseph's best interest with his own affidavit, affidavits of people in Butte who had contact with Joseph, and with a copy of the national study on the differences between public and private school education. On appeal, Robert attached additional support for his arguments such as proof of test scores from Butte Central. Robert asserts that his testimony is uncontradicted and that his affidavits and hearing testimony constitute the only sworn evidence before the court.

¶21 On appeal, Robert asks that this Court find the District Court's order clearly erroneous and order that Robert be Joseph's residential custodian during the school year, that Joseph attend Butte Central, and that Joseph's Social Security benefits be used to pay for tuition at Butte Central with the balance saved for future education costs.

¶22 In contrast, Cheryl asserts that Robert did not support his opinion testimony that Butte Central is a better school than the public schools in Anaconda with the proper evidentiary support, but only included the national study. Cheryl asserts that Robert therefore failed to meet his burden to support his motion to change the previous parenting plan. Cheryl notes that the District Court did not allow her to cross-examine Robert on his opinions regarding Butte Central because the court stated it had all the information it needed to resolve the issue. Cheryl also notes that the District Court's final order states that there was an "absence of credible evidence as to the relative merits of the two school systems." Therefore, Cheryl argues that the fact that Robert's testimony was uncontradicted does not demonstrate that the court's findings regarding Joseph's best interest were clearly erroneous.

¶23 Upon direct questioning by the court at the hearing, Cheryl simply asserted that because Robert agreed to allow to her to continue to be Joseph's residential custodian in the mediated settlement agreement, that it was in Joseph's best interest to attend school in Anaconda where he lived, that Joseph had made friends in Anaconda that he would be attending school with, and that it would be disruptive for Joseph to drive to Butte every day for school, especially in light of the fact that there was often bad weather on the road between Butte and Anaconda during the school year. Cheryl also asserted that because Joseph is seven years of age and therefore old enough to attend school rather than day

care, she would begin to save some of the Social Security benefits for Joseph's future education that would not need to be spent on the free public schools in Anaconda.

¶24 In her brief on appeal, Cheryl also cites *In re Marriage of Gersovitz* (1989), 238 Mont. 506, 509, 779 P.2d 883, 885, for the proposition that any consideration of religious education must be considered in the general context of the best interest of the child. Further, Cheryl argues it is proper for her to use Joseph's Social Security benefits for his present needs because she alleges Robert does not pay child support. In sum, Cheryl asserts that the District Court's findings were in Joseph's best interest and were not clearly erroneous.

¶25 In reviewing the record from the District Court, we note that the proper foundation was not laid for many of the evidentiary assertions discussed above and therefore these assertions were not properly admitted according to the Montana Rules of Evidence. Further, other evidentiary errors were made regarding properly accepting testimony for the record. However, for purposes of this appeal, we will accept the general facts asserted by the parties as properly established because that is what the trial court did and these are the facts upon which the court based its opinion.

## B. The District Court Did Not Err In Its Findings Regarding Joseph's Best Interest

¶26 Having reviewed the evidence before the District Court, we hold the court did not err in finding that it was in Joseph's best interest to remain in Anaconda and attend school and that it was also in Joseph's best interest that Cheryl have discretion to determine how his benefits should be used for his present and future needs.

### 1. Butte Central or Anaconda Public Schools?

¶27 Our review of prior case law indicates that we have not previously considered parental disagreements that focus on which school a child should attend. However, our decisions indicate that a district court should use common sense in considering issues in the best interest of a child. *In re Marriage of Syverson* (1997), 281 Mont. 1, 17, 931 P.2d 691, 701. Further, *Syverson* also indicated in dicta that a district court should not consider arrangements where a child has to attend school in two different locations, in order to preserve a custody arrangement. *Syverson*, 281 Mont. at 17, 931 P.2d at 701. We have also upheld the recognition that stability is important to children, so much so that custody be changed in order to allow them to remain in their current community. *In re Marriage of*

*Bergner* (1986), 222 Mont. 305, 310-11, 722 P.2d 1141, 1145.

¶28 Based on our review of the record and our prior case law, we hold that the District Court did not err in finding that Joseph should remain in school in Anaconda. The District Court accepted the terms of the mediated settlement which allowed Cheryl to remain the residential custodian. Therefore, allowing Joseph to remain with her and attend a school in the same community in which he lives can hardly be considered clearly erroneous, but instead provides stability for Joseph.

¶29 We note that in presenting the question on school attendance to the court, Robert was in essence asking the court to reverse the settlement agreement and make him the residential custodian. Presenting a court with questions which require it to ignore a mediation defeats the whole purpose of mediation to further the wishes discussed and agreed to by the parties. The school question presented to the court in this case attempted to get the court to accomplish an entirely different purpose, awarding custody, with a backdoor approach. We will not reverse a district court that resists such attempts to defeat mediation.

¶30 Further, the court indicated that it had no credible evidence showing that Butte Central was a significantly better school. Even accepting the evidence submitted by Robert on appeal that Butte Central's standardized test scores are above the *national* average, this evidence does not show Anaconda's schools are necessarily worse. Further, even if Butte Central were a better school, Anaconda's schools would have to be shown to be significantly substandard in order to demonstrate to the court that it was in Joseph's best interest not to stay in the home and town of his residential custodian, Cheryl. As the District Court stated, it had no credible evidence showing significant differences between the schools. Therefore, the District Court's finding on the issue of school attendance was not clearly erroneous.

### 2. The Use of Joseph's Social Security Benefits

¶31 We have also not previously addressed the specific question of how a child's federal Social Security benefits under 42 U.S.C. 402(d)(1994), may be used. However, we have held that such benefits may be credited against a noncustodial parent's child support obligation. *In re Marriage of Cowan* (1996), 279 Mont. 491, 499-502 , 928 P.2d 214, 219-21. Inherent in this rule is the assumption that such benefits be used to support a child's present needs. We have also held that the manner in which child support is to be used is

left to the discretion of the custodial parent. *Willoughby v. Loomis* (1994), 264 Mont. 44, 51, 869 P.2d 271, 275; *In re Marriage of Hopper*, 1999 MT 310, ¶ 47, 297 Mont. 225, ¶ 47, 991 P.2d 960, ¶ 47. Further, under § 40-6-212, MCA, an allowance may be made to the parent of a child out of the child's property for the past or future support and education of the child for the child's benefit.

¶32 While it is true that federal Social Security benefits are intended to provide education for the recipient, *Elam v. Hanson* (N.D. Ohio 1974), 384 F.Supp. 549, this limited purpose only applies to recipients over age 18. For minor age recipients, however, the general purpose of the federal benefits is to provide "at least some measure of income and security to those who have lost a wage-earner on whom they depended." *Ziskin v. Weinberger* (S. D. Ohio 1973), 379 F.Supp. 124, 126.

¶33 In this case, the record demonstrates that in 1993, the parties initially agreed to a $50 per month child support payment. Later, during Robert's 1996 petition for modification, the parties did not change this amount, but they recognized that their initial agreement was not within this state's child support guidelines, as required by § 40-4-204 and § 40-5-209, MCA. Cheryl currently receives $87.50 per month through a garnishment of Robert's military benefits. In light of the above precedent, we hold the District Court's finding that Cheryl had discretion to use these funds was not clearly erroneous because Joseph's Social Security benefits and the military garnishment provide reasonable monthly support for Joseph's present needs.

¶34 While we agree that Robert expressed serious concerns regarding Joseph's welfare, including learning a foreign language at a young age, receiving a religious education, preparing for advanced study in the sciences, and saving for a college education, we cannot conclude here that the District Court was clearly erroneous in its order. The court's order provided for Joseph's stability by allowing him to go to school in Anaconda where Cheryl lives and it provided reasonable support for his present needs. Further, the court made clear that the parties could and should continue to work together to address Joseph's best interest in the future, which could include finding alternative means for providing for the concerns expressed during the proceedings.

## V. CONCLUSION

¶35 We conclude that substantial evidence supports the District Court's findings in Joseph's best interest.

¶36 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER