No. 93-358

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE MARRIAGE OF

SHIRLEY ANN BROWNELL,

      Petitioner and Appellant,

  and

ARTHUR NELSON BROWNELL,

      Respondent and Cross-Appellant.

FILED

DEC 22 1993

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Russell K. Fillner, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Kevin T. Sweeney, Sweeney & Healow,
        Billings, Montana

    For Respondent:

        Donald L. Harris, Crowley, Haughey, Hanson,
        Toole & Dietrich, Billings, Montana

Submitted on Briefs:  December 9, 1993

Decided:  December 22, 1993

Filed:

_____

      / Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Arthur N. Brownell filed a motion to modify his dissolution decree in the District Court for the Thirteenth Judicial District, in Yellowstone County. Shirley A. Brownell opposed the modification and filed a motion to request permanent maintenance. The District Court granted Arthur's motion to modify, denied Shirley's motion for permanent maintenance, and ordered that Arthur pay her costs and a part of her attorney fees. Shirley now appeals the District Court's order and Arthur cross-appeals that portion of the order awarding Shirley costs and attorney fees. We affirm in part, reverse in part, and remand with instructions.

The issues on appeal are:

1. Did the District Court err when it granted Arthur's motion to modify the original decree?

2. Did the District Court err when it refused to rescind the modification agreement?

3. Did the District Court err when it characterized payments to Shirley as maintenance rather than as a division of retirement benefits?

4. Did the District Court err when it denied Shirley's request for permanent maintenance?

5. Did the District Court err when it awarded attorney fees and costs to Shirley?

FACTUAL BACKGROUND

The parties' 30-year marriage was dissolved on May 27, 1987. At that time, Arthur was employed by Burlington Northern Railroad

and was ordered to pay maintenance to Shirley for a period of five years. She was also awarded one-half of Arthur's pension and retirement benefits that had accumulated during the marriage. Shirley was 50 years old at the time of the decree.

On June 1, 1991, at 57 years of age, Arthur was given an opportunity for early retirement from the railroad. He was offered severance pay in the amount of $66,259.62, and a moving allowance in the amount of $6,000. If he retired early, he would receive $1,872.92 per month from his company pension until age 60, at which time the pension would be reduced to $1,128.42 per month. However, at age 60 he would also become eligible to receive railroad retirement benefits in the amount of $1,480 per month.

Arthur determined that he could not afford to retire based on the terms of the original decree. After consulting his attorney, he began negotiating with Shirley and in July 1991, the parties signed an agreement to modify those terms of the decree that distributed retirement benefits. Shirley scheduled an appointment with her attorney, but canceled it when changes were made in the proposed agreement to her satisfaction. She did not consult an attorney before she signed the agreement.

The modification agreement, prepared by Arthur's attorney, including changes requested by Shirley, provided that Arthur would pay Shirley a $12,000 lump sum and $300 per month beginning January 1, 1992, for six and one-half years. Commencing in June 1998, Arthur's monthly obligation to Shirley would increase to $350, terminable upon either party's death. Also in June 1998,

3

Shirley would begin to receive her own railroad retirement benefits in the amount of $435 per month.

Shirley's attorney became involved when he was served with notice of the hearing on Arthur's motion to modify the decree and to approve the terms of the modification agreement. Shirley then requested that the District Court deny Arthur's motion for modification and rescind the modification agreement. She separately moved that the court modify the original decree to award her permanent maintenance. The maintenance payments provided for in the original decree were scheduled to end on December 31, 1991.

## STANDARD OF REVIEW

We review findings of fact by the district court to determine if they are "clearly erroneous." *In re Marriage of Eschenbacher* (1992), 253 Mont. 139, 142, 831 P.2d 1353, 1355. In *Eschenbacher*, we applied the three-part test adopted in *Interstate Production Credit Association v. DeSaye* (1991), 250 Mont. 320, 820 P.2d 1285. We will review the record to determine if the findings are supported by substantial evidence, and if there is substantial evidence, we next determine if the district court has misapprehended the effect of the evidence. Even if there is substantial evidence and a proper understanding of the evidence, we may yet declare a finding clearly erroneous when it is clear and definite that a mistake has been committed. *See, Eschenbacher*, 831 P.2d at 1355.

4

We review conclusions of law to determine whether the district court's interpretation of the law was correct. *In re Marriage of Burris* (Mont. 1993), 852 P.2d 616, 619, 50 St. Rep. 525, 526.

## I.

Did the District Court err when it granted Arthur's motion to modify the original decree?

Shirley argues that the District Court erred when it found that she would "receive more money under the July, 1991 agreement than under the final decree." She asserts that she will actually receive less money. However, this argument is based on the assumption that Arthur would have retired early even if Shirley had not been persuaded to sign the modification agreement. The evidence is undisputed that Arthur would not have retired early if Shirley had not agreed to waive her rights as set forth in the decree.

Under the decree, Arthur paid Shirley monthly maintenance for five years as follows: $550 in 1987, $500 in 1988, $450 in 1989, $400 in 1990, and $350 in 1991. Had she not agreed to modify the decree, Shirley would have been without income for approximately seven years until she qualified for her own spouse's retirement benefits at the age of 62 and her share of Arthur's retirement benefits that he would have begun receiving at age 65. However, under the modified agreement, she immediately received benefits at age 55, and by age 75 will have received $157,860. Under the decree, she would have received $129,477 by age 75. The difference between the total amount received under the decree, as opposed to

5

the modification agreement, will narrow as Shirley grows older. The break-even point is estimated at age 89.

Section 40-4-208(3), MCA, states that "[t]he provisions [of a decree] as to property disposition may not be revoked or modified by a court, except: (a) upon written consent of the parties . . . ." To assess whether the terms relevant to property disposition in a separation agreement are binding, the district court must consider the economic circumstances of the parties to determine whether the agreement is unconscionable. Section 40-4-201(2), MCA.

The District Court heard testimony with regard to the economic circumstances of both parties, and testimony from Arthur with regard to the comparative economic benefits of the modification agreement versus the decree. Shirley did not offer any evidence to dispute Arthur's testimony nor did she rebut his testimony with her own economic analysis.

We hold that there was substantial evidence to support the finding of the District Court that Shirley was better off under the modification agreement and that the modification agreement was not unconscionable.

II.

Did the District Court err when it refused to rescind the modification agreement?

Shirley argues that because she has been diagnosed with schizoaffective disorder, she is a "person of unsound mind but not entirely without understanding," under § 28-2-203, MCA, and

6

therefore, that the agreement she entered into with Arthur is subject to rescission under § 28-2-1711, MCA. She further argues that her consent to enter the agreement was obtained by Arthur through "duress, menace, fraud, or undue influence."

"It is well settled in Montana case law that undue influence must be proven by the person contesting a will or contract." *Adams v. Allen* (1984), 209 Mont. 149, 153, 679 P.2d 1232, 1235. Arthur responds that Shirley failed to meet this burden.

The District Court found that the negotiations between Arthur and Shirley were "cordial," and that there was no evidence that he "threatened, coerced, or misrepresented any fact" to her. As for Shirley, the District Court found that:

> She rejected Arthur's first offer and could have rejected any other offer. This is especially true considering that Shirley consulted with her four adult children, her mother and step-father, and her sister and brother-in-law before signing the agreement . . . . She also made an appointment to consult with her attorney, but canceled it after reaching what she thought was a fair agreement.

After reviewing the entire record, we conclude there was substantial evidence to support the District Court's finding that Shirley was competent to enter into the modification agreement with Arthur and that the agreement was not the result of undue influence.

III.

Did the District Court err when it characterized payments to Shirley as maintenance rather than as a division of retirement benefits?

7

Shirley argues that the District Court mistakenly assumed that the July 1991 agreement modified the decree with respect to maintenance as well as the settlement of retirement benefits. She points out that the word "maintenance" never appears in the agreement.

Shirley's concern is that maintenance is taxable to her (and deductible for Arthur); whereas property division transfer payments are not taxable as income. *See* I.R.C. §§ 71 and 215.

According to Arthur, Shirley failed to raise the issue in District Court and therefore, this Court should not consider Shirley's argument. We note, however, that the payments were first characterized as maintenance in the District Court's post-trial findings of fact and conclusions of law and order dated December 17, 1992. Therefore, Shirley had no prior opportunity to object to their characterization.

According to the 1987 decree, Arthur's maintenance obligation ended in December 1991. Arthur moved the District Court to modify that portion, and only that portion, of the decree which set forth the parties' agreement dividing retirement benefits. Furthermore, he objected to Shirley's motion for further maintenance on the basis that he was unable to pay it and therefore she was not entitled to future maintenance under the statute. We conclude that there was no evidence to support the District Court's finding that the payments provided for in the modification agreement were maintenance payments rather than a new form of property division and we reverse that finding of the District Court.

8

## IV.

Did the District Court err when it denied Shirley's request for permanent maintenance in the amount of $1,200 per month?

Shirley argues that because the District Court was mistaken when it referred to the monthly payments to Shirley as "maintenance," that this mistake led the District Court to deny Shirley's motion for permanent maintenance. She specifically points to the District Court's finding that Shirley had not shown changed circumstances "so substantial and continuing since July, 1991 so as to make the terms of the July, 1991 agreement unconscionable." She calls our attention to the Commission Comment to § 316 of the Uniform Marriage and Divorce Act, which states, "the person seeking modification must show that circumstances have changed since the date of the original order so that the order is unconscionable at the time the motion is made and will continue to be unconscionable unless modified." (Emphasis added). *See* § 40-4-208, MCA. She argues that there was sufficient evidence that her mental condition had worsened since the original decree to the extent that the original award was unconscionable.

While we agree with Shirley that the July 1991 agreement did not modify Arthur's maintenance obligation under the decree--that it merely substituted or modified his obligations with regard to dividing his retirement benefits, we also conclude there was evidence to support the District Court's finding that Shirley was not entitled to continued maintenance payments. Her health care provider testified that the mental condition from which she now

9

suffers is the same condition for which she was being treated in the 1980s and there was evidence that Arthur did not have sufficient income after his retirement to pay continued maintenance. The District Court's order denying Shirley's motion for continued maintenance is affirmed.

V.

Did the District Court err when it awarded attorney fees and costs to Shirley?

The standard of review for an award of attorney fees in a dissolution action is whether the district court abused its discretion. *Burris*, 852 P.2d at 620.

Arthur cross-appeals the District Court's award of costs and attorney fees to Shirley, arguing that she only incurred these costs as a result of her own "reneging" on the agreement. Furthermore, he argues, she had just received $12,000 from which she could pay these costs.

Section 40-4-110, MCA, gives the district court discretion to award costs and attorney fees "from time to time, after considering the financial resources of both parties . . . ." Here, the District Court's finding that Shirley did not have sufficient financial resources to pay her costs and attorney fees was accompanied by a finding that Arthur would have access to his thrift plan valued at $42,000 on or about May 20, 1993.

Pursuant to § 40-4-110, MCA, attorney fees are based on the respective financial resources of the parties and not based on which party prevailed. After review of the record, we conclude

10

that the District Court did not abuse its discretion when it ordered that Arthur pay Shirley's costs and part of her attorney fees. We also note that while no rule prohibited Arthur from dealing with Shirley directly, some of the expense of this litigation might have been avoided if the attorney who represented her in the original and second proceeding had not been excluded from the negotiations until after the agreement was executed.

Based on the record before us, with the exception noted, we find that the District Court made its findings based on substantial evidence.

The judgment of the District Court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

11