FILED

February 3 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0418

DA 14-0418

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 29

CRISSY WEIBERT, n/k/a TIEMAN,

      Plaintiff and Appellee,

    v.

JIM WEIBERT,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DR-10-064 (C)
Honorable Heidi J. Ulbricht, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Katherine P. Maxwell, Maxwell Law, PLLC, Kalispell, Montana

      For Appellee:

          Valori E. Vidulich, Kaufman Vidal Hileman Ellingson, PC,
Kalispell, Montana

Submitted on Briefs:  January 7, 2015
Decided:  February 3, 2015

Filed:

                       Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      Appellant Jim Weibert (Jim) appeals from an order of the Eleventh Judicial District, Flathead County, awarding Crissy Tieman (Crissy) custody of their daughter and attorney's fees.

¶2      The sole issue on appeal is whether the District Court erred when it ordered Jim to pay Crissy's attorney's fees.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3      Jim and Crissy divorced on February 25, 2012.  They have one minor child, B.W., who is autistic.  Initially, the parties agreed that Crissy would be the primary residential parent and B.W. would visit Jim on an alternating, two-week basis.  In October 2010, Crissy notified Jim of her intention to move to Bellingham, Washington.  The parties participated in two mediation sessions, with two different mediators, during this time.  In July 2011, Doctor Jennifer Simon-Thomas evaluated B.W. and made several written recommendations, including increases in speech and language therapy.

¶4      On August 16, 2011, the District Court held a hearing on the issue of Crissy's relocation to Washington.  The Court concluded that Crissy could move and that it was in B.W.'s best interest to continue living with Crissy.  Crissy relocated to Washington and has remained there since.  The parties then entered into a stipulation setting forth a new visitation schedule, whereby Jim would travel to Washington once a month and Crissy would bring B.W. to Montana once a month.  The parties later informally changed this

plan, as the travel put strain on B.W. The stipulation also required Crissy to follow Dr. Simon-Thomas' recommendations.

¶5 On September 26, 2012, Jim filed a motion for modification of the parenting plan requesting that the District Court grant him primary residential custody of B.W. Jim claimed that Crissy had failed to follow the recommendations of Dr. Simon-Thomas. In response, Crissy filed a brief in opposition to Jim's motion, requesting that the court implement her proposed amended parenting plan formalizing the parties' informal visitation plan and that Jim pay her attorney's fees. Included in the proposed parenting plan was a provision to transfer jurisdiction to Washington State.

¶6 On April 26, 2013, the District Court held a contested hearing on Jim's motion. At the hearing, Jim partially rescinded his request to be the primary custodial parent on the condition that B.W. receive additional speech therapy. Due to timing issues at the District Court, a second day of hearing was scheduled. On the second day, Jim's lawyer clarified that Jim no longer sought the change in residential custody, but still requested the increase in out-of-school speech therapy. After it became clear that Jim had not conferred with Crissy about his proposal, the judge suggested the parties recess to discuss the issues. The parties were able to reach an agreement on a number of items, but remained divided on four issues—jurisdiction, canceled visitation, additional speech therapy, and attorney's fees. The District Court ruled that the jurisdiction issue was not ripe, that Crissy must arrange make-up visits, and denied the request for additional speech therapy. Additionally, the District Court ordered Jim to pay Crissy's attorney's fees incurred in defending against his motion to amend the parenting plan.

3

¶7    On May 29, 2014, the District Court conducted a hearing on the reasonableness of the fees and ordered Jim to pay $10,359. At the hearing, Crissy presented testimony from family-law attorney Mary Obermiller, who testified that the fees were reasonable given the complexity of the case and the seriousness of the matter. The District Court stated its basis for the award, noting that "after the hearing it became clear to me that the evaluation had been done by the school, Ms. Impero [Crissy] was abiding by that, and it was in the best interest everything that was being done." Additionally, the judge indicated that she awarded the fees because Jim did not prevail on his motion. Jim appeals.

## STANDARD OF REVIEW

¶8    We review a district court's award of attorney's fees in a dissolution action for abuse of discretion. *In re Marriage of Dennison*, 2006 MT 56, ¶ 23, 331 Mont. 315, 132 P.3d 535. "A district court has abused its discretion if substantial evidence does not support its award of attorney's fees." *Marriage of Dennison*, ¶ 23.

## DISCUSSION

¶9    *Issue: Whether the District Court erred when it ordered Jim to pay Crissy's attorney's fees.*

¶10   District courts have the discretion to award attorney's fees. *In re Marriage of Brownell*, 263 Mont. 78, 85, 865 P.2d 307, 311 (1993). Pursuant to § 40-4-110, MCA, a district court "may order a party to pay a reasonable amount for the costs to the other party of maintaining or defending any proceeding under chapters 1 and 4." An award of attorney's fees under § 40-4-110 must be reasonable, based on necessity, and rooted in

4

competent evidence. *In re Marriage of Barnard*, 241 Mont. 147, 154, 785 P.2d 1387, 1391 (1990). This Court will not disturb an award of fees if it is supported by substantial evidence. *In re Marriage of Barnard*, 241 Mont. at 154, 785 P.2d at 1392 (citations omitted).

¶11 Jim argues that § 40-4-110 does not apply to this case because the statute is directed at marital financial resources. Additionally, he argues that the District Court did not make any specific findings as to the statute, nor did it consider the parties' financial resources. Contrary to Jim's arguments, § 40-4-110 does apply to this case. The statue permits a district court to award attorney's fees incurred defending or maintaining actions under various chapters of Title 40, MCA, including Chapter 4 "Termination of Marriage, Child Custody, Support." Moreover, the Commissioners' Notes specifically note that the authority to award fees and costs extends to "different stages of the proceedings" and the statute expressly allows "sums for legal and professional services rendered . . . *after entry of judgment*." Section 40-4-110, MCA (emphasis added). This action was brought under Chapter 4 of Title 40, MCA, as Jim initially moved the District Court to alter the custodial arrangement, and § 40-4-110 applies.

¶12 Jim also argues that both parties prevailed on different issues and thus attorney's fees were inappropriate. Jim asserts that he abandoned his request to serve as the primary custodian after he decided B.W. would do best with Crissy, and that the sole issue was whether B.W. should receive additional speech therapy sessions. He maintains that although the District Court denied his request for additional speech therapy, Crissy lost on the issue of jurisdiction and makeup visitation. He cites *In re Marriage of Winters*,

2004 MT 82, 320 Mont. 459, 87 P.3d 1005 and *In re Marriage of Pfennigs*, 1999 MT 250, 296 Mont. 242, 989 P.2d 327, for the premise that attorney's fees are not appropriate when both parties prevail. *Winters* and *Pfennig*s are distinguishable from the facts in this case. The district courts in those cases relied on the parties' dissolution agreements, which provided for fees to the prevailing party. In *Winters*, we affirmed the district court's decision to deny fees, and cited *Pfennigs* for the rule that "a contractual provision awarding attorney fees to the prevailing party in a divorce action was not effective when each party prevailed on different issues." *Winters*, ¶ 59 (citing *Pfennigs*, ¶ 42). Here, the District Court did not base its award on the parties' contract and thus *Winters* and *Pfennigs* are factually distinguishable from the case at bar.

¶13    It is also important to note that § 40-4-110 does not require a party to prevail to receive attorney's fees. Under § 40-4-110, "attorney fees are based on the respective financial resources of the parties and not based on which party prevailed." *In re Marriage of Brownell*, 263 Mont. at 85, 865 P.2d at 311. Instead, the district court judge examines what is reasonable in light of each party's circumstances. Awarding Crissy attorney's fees was not unreasonable when Jim changed his position on his motion after eight months and caused the parties to expend considerable expenses to resolve an issue that may have been resolved through direct discussion or mediation.

¶14    Jim also argues that the District Court did not state a basis for the award. Although the judge did not make a specific reference to § 40-4-110, she did state the grounds on which she awarded the fees. On June 10, 2013, when ruling on the issue of attorney's fees, the judge stated that the "hearing has changed substantially from what -

6

what the Court was presented" and the "motion could have been prevented if the parties had talked to one another prior to getting the Court involved." Additionally, at the hearing on reasonableness of the attorney's fees, the judge found that Jim presented no medical or professional basis for his request and B.W. was receiving proper therapy.

¶15 Substantial evidence supports the District Court's order. First, as the District Court noted, the hearing could have been avoided had the parties discussed Jim's concerns. Nothing prevented Jim from speaking with Crissy directly; indeed the parties had utilized mediation multiple times in the past. However, the parties did not discuss Jim's concern until the hearing and only after the judge suggested the parties discuss the speech therapy off the record.

¶16 Second, evidence at the hearing established that B.W. was receiving appropriate speech therapy services. Jim was unable to substantiate his claims that Crissy failed to follow the medical recommendations for B.W. For example, he testified that Dr. Simon-Thomas recommended speech therapy two or three times weekly, but then was unable to corroborate this statement with the doctor's report, which simply recommended "increase in speech and language therapy . . . . School-based service should continue, as well as outpatient adjunct therapy." Additionally, on cross-examination, Jim admitted to lying in his affidavit when he stated that Crissy had not placed B.W. in any speech therapy programs. At the hearing, he conceded to knowing that his daughter actually went to speech therapy.

¶17 Third, Crissy prevailed in establishing that B.W. received adequate speech therapy services. Although insurance and waiting lists initially prevented B.W. from receiving

additional speech therapy services, she received in-school therapy weekly from the outset. At the time of the hearing, B.W. received one hour of out-of-school therapy, in addition to the school-based services and equine therapy, and was registered to participate in a summer program for autistic children. Jim testified that he was happy with B.W.'s school and pleased with her participation in the equine and summer programs.

¶18 Finally, Jim's decision to change his mind at the last minute resulted in unnecessary legal costs to Crissy that may have been avoidable. The District Court heard testimony from Crissy that she had to sell a car, take out a loan, and max out her credit cards to hire an attorney to defend against Jim's motion. Under these facts, the District Court had discretion to award attorney's fees.

¶19 Crissy has requested this Court to award attorney's fees and costs on appeal. We decline to award Crissy fees on appeal.

¶20 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JIM RICE

8