FILED

May 17 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0632

DA 15-0632

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 117N

IN RE THE MARRIAGE OF:

KENNETH MARK MURPHY, JR.,

      Petitioner and Appellant,

  v.

SHERI LYNN MURPHY,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Sixth Judicial District,
In and For the County of Park, Cause No. DR 14-46
Honorable Brenda Gilbert, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Suzanne C. Marshall, Marshall Law Firm, P.C., Bozeman, Montana

      For Appellee:

          John P. Nesbitt, Guza, Nesbitt & Putzier, PLLC, Bozeman, Montana

Submitted on Briefs:  April 6, 2016

Decided:  May 17, 2016

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Kenneth Murphy, Jr. (Ken) appeals an order of the Sixth Judicial District Court, Park County, awarding attorney fees and costs to his ex-wife, Sheri Murphy (Sheri) pursuant to § 40-4-110, MCA. We address whether the District Court abused its discretion in awarding attorney fees and costs to Sheri. We affirm in part and reverse in part.

¶3 Ken and Sheri married in July 2008 and separated in April 2014. They attended mediation with their respective legal counsel and signed a Memorandum of Agreement (Agreement) on December 19, 2014. Among other provisions, the Agreement provided that the marital home in Belgrade, Montana, "will be placed on the market for sale as soon as possible," that the parties would list the property with a mutually-agreed-upon listing agent, and that the listing agent would do a walk-through of the home and make a list of repairs necessary for sale. The Agreement further provided: "Ken will pay up to the first $2,000 of those repairs. Any costs in excess of that $2,000 shall be split 50/50 between the parties. The parties shall mutually agree upon the person who performs the repairs." The Agreement provided that Sheri would "provide Ken with approximately

2

half of the marital Christmas decorations by December 21, 2014." The Agreement also contained parenting provisions for the parties' three minor children.

¶4 The following undisputed facts are derived from the District Court's June 17, 2015 findings of fact, conclusions of law, and decree of dissolution, and its August 4, 2015 findings of fact, conclusions of law, and supplemental judgment awarding attorney fees. Sheri works two part-time jobs where she makes nine and twelve dollars per hour, respectively. During the parties' marriage, Ken worked at the Interwest Tire Factory in Belgrade. When the parties separated, Ken temporarily worked in the Bakken as a truck driver before returning to Interwest, where he makes twenty-eight dollars per hour. Ken was home from the Bakken for approximately three weeks in the end of December 2014 and beginning of January 2015. During this time, Ken did not contact any potential real-estate listing agents or conduct repairs or improvements to the marital home. When Ken returned to the Bakken, Sheri contacted and met with listing agent Bret Tudsbury. A January 14, 2015 email from Ken's counsel to Sheri's counsel stated that Ken was "ok" with Tudsbury's recommended repairs. Ken's counsel advised Sheri to proceed with the repairs and send Ken the receipts pursuant to the Agreement. Ken returned to Montana for 5 days at the end of January 2015. During that period, he conducted a walkthrough of recommended repairs to the home with Tudsbury.

¶5 Meanwhile, on January 5, 2015, Sheri provided a Stipulated Final Parenting Plan to Ken, through counsel. After returning to North Dakota at the end of January, Ken refused to sign the listing agreement or stipulated parenting plan, or to provide a stipulated property settlement agreement, as per the Agreement. Ken alleged that he was

refusing to cooperate because Sheri materially breached the Agreement by providing half of the Christmas decorations on December 23 instead of December 21.

¶6 On February 13, 2015, the District Court issued an order incorporating the provisions of the Agreement, requiring the parties to abide by them, and directing Ken to sign the stipulated final parenting plan and return the document to Sheri's counsel. Ken refused to comply with the order and proposed seven substantive changes to the parenting plan that were not agreed to by the parties or set forth in the Agreement. On March 25, 2015, Sheri provided Ken with receipts for the repairs recommended by Tudsbury. Ken refused to pay the first $2,000. In April 2015, the parties sold the marital home.

¶7 In its June 17, 2015 order, the District Court concluded that, pursuant to § 40-4-110, MCA, "Sheri lacks access to marital funds with which to pay her professional fees in this matter." The Court emphasized the large disparity in the parties' financial circumstances and concluded that Sheri was entitled to an award of attorney fees and costs, to be determined by a separate evidentiary hearing. The Court further found that Ken's failure to follow the specific provisions of the Agreement increased the cost of litigation.

¶8 On August 4, 2015, after holding a hearing, the District Court issued findings of fact, conclusions of law, and a supplemental judgment awarding attorney fees and costs to Sheri. Based on expert testimony and other evidence presented at the hearing, in addition to the Court's previous findings, the Court concluded that Sheri should pay all of her attorney fees and costs through the December 19, 2014 mediation. Pursuant to § 40-4-110, MCA, the Court ordered Ken to pay 75% of Sheri's attorney fees and costs

4

after the mediation, amounting to $26,745.71. Ken appeals the District Court's decision to award Sheri attorney fees and costs and the amount awarded.

¶9 We review a district court's factual findings for clear error. *BNSF Ry. Co. v. Cringle*, 2012 MT 143, ¶ 16, 365 Mont. 304, 281 P.3d 203. A district court's determination as to whether legal authority exists for an award of attorney fees is a conclusion of law, which we review for correctness. *Nat'l Cas. Co. v. Am. Bankers Ins. Co.*, 2001 MT 28, ¶ 27, 304 Mont. 163, 19 P.3d 223.

¶10 Section 40-4-110(1), MCA, provides that a district court, "after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending" a dissolution proceeding. The statute's purpose "is to ensure that both parties have timely and equitable access to marital financial resources for costs incurred before, during, and after" a dissolution proceeding. Section 40-4-110(2), MCA. Thus, an award of attorney fees under § 40-4-110, MCA, is discretionary but "must be reasonable, based on necessity, and rooted in competent evidence." *Weibert v. Weibert*, 2015 MT 29, ¶ 10, 378 Mont. 135, 343 P.3d 563.

¶11 Ken contends that the District Court's award of attorney fees and costs was both unreasonable and unsupported by the evidence. First, Ken contends that the District Court awarded Sheri fees and costs without considering the financial resources of both parties. According to Ken, the District Court erred because it did not analyze the percentage each party received from the marital estate or Ken's ability to pay Sheri's fees. However, Ken does not dispute the District Court's allocation of marital assets and

5

child support obligations. Nor does he dispute the District Court's findings regarding the disparity in the parties' incomes. In incorporating the Agreement in its findings of fact and conclusions of law, the District Court clearly considered the financial obligations of both parties. The District Court's findings are supported by substantial evidence.

¶12 Ken also contends that the District Court's award of attorney fees was unreasonable because: (1) some of the services for which Sheri's counsel billed were unsuccessful; (2) some services were billed at Sheri's counsel's hourly rate but actually were performed by administrative staff; and (3) Sheri's counsel double-billed for services performed on April 20, 2015. Regarding Ken's first contention, § 40-4-110, MCA, "does not require a party to prevail to receive attorney's fees. . . . Instead, the district court judge examines what is reasonable in light of each party's circumstances." *Weibert*, ¶ 13. Regarding Ken's second contention, he does not specify which specific services, dates, and hours should have been billed at the administrative rate, and we cannot discern this information from the record. *See In re Marriage of McMahon*, 2002 MT 198, ¶ 6, 311 Mont. 175, 53 P.3d 1266 ("This Court has repeatedly held that we will not consider unsupported issues or arguments."). Ken's third contention—that Sheri's counsel double-billed for services performed on April 20, 2015—has merit.

¶13 Sheri's counsel's billing report for April 20, 2015 reflects the following charges:

● $500 to "Finalize Exhibits; draft Trial Position Statement; file all documents with Court";

● $1,300 to "Continue preparing Exhibit Notebooks; deliver to opposing counsel and Court in Livingston"; and

6

● $1,300 to "Prepare Exhibit notebooks; deliver to opposing counsel and Court in Livingston."

The language for the latter two services is nearly identical, as is the amount billed. It makes no sense that Sheri's counsel would have twice driven to Livingston to deliver the same exhibit notebooks. The District Court did not address this discrepancy. The District Court erred when it included the duplicate amount in its award of attorney fees. Ameliorating the District Court's error requires subtracting $1,300 from Sheri's total attorney fees and costs incurred after mediation—$35,660.95—thereby reducing that number to $34,360.95. Ken's 75% share of this new total is $25,770.71, and Sheri's 25% share is $8,590.24.

¶14    Ken's final contention is that the fees were not reasonable given the amount of money in controversy and size of the marital estate. The District Court found that, "[a]though the amount of money and value to be protected was not overly significant, . . . this action was not based upon monetary damages" but had the goals of equitably dividing property, entering into a parenting plan, and dissolving the marriage. The Court concluded that "Sheri's professional fees were reasonable and necessary to achieve the end result." The Court further noted that "the labor, time and trouble involved appears to have been increased significantly due to the actions or inactions of Ken."

¶15    In *Weibert*, we held that an award of the wife's attorney fees was not unreasonable when the husband changed his position after eight months "and caused the parties to expend considerable expenses to resolve an issue that may have been resolved through direct discussion or mediation." *Weibert*, ¶ 13. Here, the District Court found that a

major reason for the higher fees was Ken's decision to not abide by some of the provisions of the Agreement or with the court's February 13, 2015 order. As in *Weibert*, the District Court had discretion to award attorney fees in light of the disparity in financial resources and Ken's disregard for the Agreement and court order. The District Court did not abuse its discretion in requiring Ken to pay 75% of Sheri's fees and costs.

¶16 Sheri has requested that this Court award attorney fees and costs on appeal. We decline to do so. Although Sheri has substantially prevailed on appeal, Ken raised a legitimate issue regarding the double-billing of work performed on April 20, 2015.

¶17 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's interpretation and application of the law were correct, its findings of fact are not clearly erroneous, and its ruling was not an abuse of discretion. We affirm the District Court's decision to award Sheri 75% of her attorney fees. We reverse the District Court's inclusion of $1,300 that was double-billed in its calculation of the total amount of attorney fees. We remand for the District Court to revise its order consistent with this Opinion.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ MICHAEL E WHEAT